IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **HAROLD EDWARD RUTILA, IV,** § <br> **PLAINTIFF,** § <br> V. § <br> § <br> § <br> **UNITED STATES DEPARTMENT OF** § <br> **TRANSPORTATION AND FEDERAL** § <br> **AVIATION ADMINISTRATION,** § <br> **DEFENDANTS.** § | **CASE NO. 3:16-CV-2911-B-BK** <br> CONSOLIDATED CASE NO. 3:16-CV-3433-B-BK |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and the District Judge's *Standing Order of Reference*, Doc. 50, these consolidated cases were referred to the United States magistrate judge for pretrial management. The Court now considers Defendants' *Motion for Summary Judgment*, Doc. 80. As detailed here, Defendants' motion should be **GRANTED**.

**I. BACKGROUND**

The Federal Aviation Administration ("FAA") hired Plaintiff on a conditional basis as an air traffic controller ("ATC") trainee, and subsequently, after Plaintiff allegedly failed a performance assessment, terminated his employment. Doc. 81 at 8-9; Doc. 85-1 at 10. Plaintiff later submitted ten Freedom of Information Act ("FOIA") requests to the FAA, "seeking documents related to himself, other class participants, FAA employees and/or [ATC] tests and testing procedures." Doc. 81 at 9; Doc. 85-1 at 11. Following the Court's previous rulings on Defendants' motions to dismiss, the only claims remaining relate to Plaintiff's FOIA request

numbers 9143, 9145, and 9192. Doc. 73 at 1; Doc. 80. These remaining claims are the subject of the motion for summary judgment *sub judice*.

FOIA 9145 seeks records concerning the Equal Employment Opportunity ("EEO") informal complaint of Ms. Bostic, an ATC trainee who was terminated under similar circumstances as Plaintiff but who was ultimately reinstated by the FAA. Doc. 35-1 at 8; Doc. 85-1 at 9. FOIA 9143 seeks employee communications about Plaintiff, Doc. 35-1 at 4, and FOIA 9192 seeks Plaintiff's ATC evaluation logs, Doc. 35-1 at 26.

While Plaintiff broadly contends that "[a]ll three requests that remain in this case were made pursuant to both FOIA and the Privacy Act," he mentions the Privacy Act only in passing and alleges no statutory or factual basis to proceed under that statute. Accordingly, Plaintiff waived his Privacy Act claims. Doc. 85-1 at 17; *see United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) (inadequately briefed claims constitute waiver).

## II. APPLICABLE LAW

To prevail on a summary judgment motion, the moving party generally must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In the FOIA context, however, the traditional [summary judgment] standard is modified because 'the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (emphasis in original).

The FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions. These exemptions are explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation and quotation marks

omitted). The defending agency bears the burden to show that it acted in accordance with the FOIA. *Id.* To satisfy its summary judgment burden, "the agency must establish that: (1) its search for the requested material is adequate; and (2) that each responsive document is either produced, unidentifiable, or exempt from production." *Highland Capital Mgmt., LP v. Internal Revenue Serv.*, 408 F. Supp. 3d 789, 800 (N.D. Tex. 2019) (citing *Cooper Cameron Corp. v. U.S. Department of Labor, Occupational Safety and Health Administration*, 280 F.3d 539, 543 (5th Cir. 2002)).

Affidavits and declarations submitted by an agency in support of summary judgment are entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the FOIA request. *Batton*, 598 F.3d at 176. The presumption of legitimacy does not remove the agency's burden of proving that the information sought falls within the statutory exemption asserted. *Id.* The Court reviews the agency's determinations *de novo*, and the agency bears the burden of sustaining its actions. 5 U.S.C. § 552(a)(4)(B).

### III.  PARTIES' ARGUMENTS AND ANALYSIS

#### A. The FAA Conducted an Adequate Search

"An agency may demonstrate that it conducted an adequate search by showing that it used methods which can be reasonably expected to produce the information requested." *Batton*, 598 F.3d at 176 (internal citations omitted). The issue is not whether any other documents may exist, but only whether the search was adequate. *Id.*

#### 1. Defendants' Evidence

The FAA relies on the declaration of Dedra Goodman, manager of the FAA's national FOIA Program, to explain the FAA's search methodology, and on the declaration of Pamela Graham, who is assigned to the FAA's Training Services Support Division, to explain the FAA's

3

ATC training. Ms. Goodman's declaration explains that in response to Plaintiff's original FOIA request and his administrative appeal, FAA staff conducted two searches for responsive documents. Doc. 81-2 at 10-11, 32.

The FOIA Program Office transferred FOIA request 9145 to the Office of Human Resource Management ("Human Resources") and the Office of Civil Rights ("Civil Rights"). Doc. 81-2 at 15. The FOIA Program Office routed the FOIA request to these offices because "[i]f records exist, Civil Rights would have records related to [Madeline] Bostic's [Equal Employment Opportunity] complaint, the investigation process, and the resolution of the complaint," and "Human Resources could potentially have records related to any resolution of Ms. Bostic's EEO action." Doc. 81-2 at 15. Both Human Resources and Civil Rights issued a *Glomar* response[1] based on FOIA exemption 6, and Civil Rights claimed exemption 7(C) as well. Doc. 81-2 at 15.

Regarding FOIA requests 9143 and 9192, Ms. Goodman averred that after both searches were completed, "the FAA located 585 pages of responsive records, which were released in full or redacted. Specifically, the FAA released 523 pages to Plaintiff in full without redaction" and "[s]ixty-two pages were released with redactions pursuant to [e]xemptions 2, 5, 6, and 7(C)." Doc. 81-2 at 14.

### 2. Plaintiff's Response

Plaintiff does not offer controverting evidence, and instead argues the insufficiency of the evidence offered by Defendants. Plaintiff contends Ms. Goodman's declaration is deficient

---

[1] An agency's refusal to confirm or deny the existence of records exempt from disclosure is known as a *Glomar* response. *Calle v. F.B.I.*, No. 3:10-CV-2362-M, 2011 WL 3820577, at *6 (N.D. Tex. Aug. 5, 2011) (Ramirez, J.), *adopted by* 2011 WL 3837031 (N.D. Tex. Aug. 26, 2011) (Lynn, J.).

4

because it omits the names of the attorneys who searched for the documents and the amount of time spent. Doc. 85-1 at 35. Plaintiff also argues Ms. Graham's declaration is improper because she does not state her job title, even though she is assigned to the Training Services Support Division, AMA-20, Doc. 85-1 at 35, and her statements blur[] the lines between personal knowledge and hearsay . . . ." Doc. 85-1 at 36. Further, Plaintiff broadly challenges the adequacy of the FAA's search for responsive documents. Doc. 85-1 at 37 ("Ms. Graham's declaration is insufficient to allow the Court to conclude that the FAA conducted a reasonable search for responsive records."); *see also* Doc. 85-1 at 36, 43, 52-54, 56.

### 3. Analysis

Both Ms. Goodman's and Ms. Graham's declarations are awarded a presumption of legitimacy because Plaintiff failed to demonstrate that either acted in bad faith. *Batton*, 598 F.3d at 176. Indeed, "declarations accounting for searches of documents that contain hearsay are acceptable." *Highland*, 408 F.Supp.3d at 802 n.2. Moreover, Plaintiff does not explain how Ms. Graham's failure to state her job title is relevant to the FAA's adequacy of search for documents. Plaintiff also offers no factual or legal support for his conclusory assertions that the FAA's search for responsive documents was inadequate. *See* Doc. 85-1 at 36-37, 43, 52-54, 56.

Conversely, the evidence offered by the FAA establishes that it conducted multiple searches and produced a total of 585 pages of responsive documents, including 62 pages containing some redactions. Doc. 81-2 at 10, 14, 32. This is indicative of the FAA's compliance in good faith with its FOIA obligations. *Highland*, 408 F.Supp.3d at 804-05 (concluding that the IRS had satisfied its burden of conducting an adequate search and had complied with its FOIA obligations in good faith when it conducted multiple searches and produced a total of 15,858 pages of responsive documents) (citing *Landmark Legal Foundation v. Environmental*

*Protection Agency*, 272 F. Supp. 2d 59, 63 (D.D.C. 2003) ("continuing discovery and release of documents does not prove that the original search was inadequate, but rather shows good faith on the part of the agency that it continues to search for responsive documents")).

Accordingly, the Court finds that Defendants have satisfied their burden of showing they conducted an adequate search.

## B. Defendants' *Glomar* Response to FOIA 9145 is Proper Under Exemption 6

### 1. Parties' Arguments

As set out above, Defendants issued a *Glomar* response to Plaintiff's request for Ms. Bostic's EEO informal complaint—neither confirming nor denying the existence of responsive documents—under FOIA exemptions 6 and 7(C).  Doc. 81 at 14.  Plaintiff argues Defendants' *Glomar* response was improper for a number of reasons.  Plaintiff first argues that the FAA abrogated Ms. Bostic's privacy interest in the existence of her EEO complaint because "the FAA published her name in its public FOIA Request Log," quoting Plaintiff's inquiry.  Doc. 85-1 at 37-38.  Plaintiff next argues that (1) "the FAA has yet to justify its *Glomar* response with a detailed declaration," Doc. 85-1 at 38; (2) Defendants should disclose the requested information in a *Vaughn* Index, [2] Doc. 85-1 at 38; and (3) there is a public interest in the disclosure of the information to ensure the safety of the flying public.  *See* Doc. 85-1 at 39-40; Doc. 85-2 at 32-39.

---

[2] "The *Vaughn* index is named after the case of *Vaughn v. Rosen*, 484 F.2d 820 (1973) (D.C. Cir. 1973), and is 'a routine device through which the agency describes the document responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions.'"  *Driggers v. United States*, No. 3:11-CV-0229-N, 2011 WL 5525337, at *3 n.1 (N.D. Tex. Oct. 26, 2011) (Ramirez, J.), *adopted by* 2011 WL 5529801 (N.D. Tex. Nov. 14, 2011) (Lynn, J.) (citing *Rugiero v. United States Department of Justice*, 257 F.3d 534, 544 (6th Cir. 2001)).

### 2. Applicable Law

"While the [Court of Appeals for the] Fifth Circuit has never directly addressed the issue, other circuits have uniformly held that an agency may issue a *Glomar* response to a FOIA request when 'to confirm or deny the existence of records . . . would cause harm cognizable under a[ ] FOIA exception.'" *Morgan v. Fed. Bureau of Investigation*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *3 (W.D. Tex. May 24, 2016) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). As the Court of Appeals for the Second Circuit has conveniently summarized:

> [t]o properly employ the *Glomar* response to a FOIA request, an agency must "tether" its refusal to respond to one of nine FOIA exemptions—in other words, a government agency may refuse to confirm or deny the existence of certain records if the FOIA exemption would itself preclude the *acknowledgment* of such documents. An agency "resisting disclosure" of the requested records has the burden of proving the applicability of the exemption. The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions . . . . In evaluating the agency's *Glomar* response, a court must accord "substantial weight" to the agency's affidavits, provided that the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of bad faith.

*Id.* (quoting *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 68 (2nd Cir. 2009)). The *Wilner* Court also explained that "an agency may invoke the *Glomar* doctrine in response to a FOIA request regarding a publicly revealed matter" and "[a]n agency only loses its ability to provide a *Glomar* response when the existence or nonexistence of the particular records covered by the *Glomar* response has been officially and publicly disclosed." *Wilner*, 592 F.3d at 68.

Here, the FAA "tethered" its *Glomar* response to, *inter alia*, FOIA exemption 6, which provides that an agency need not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 is not only intended to include medical and personnel files, but

7

also "*all private or personal information contained in other files*, which, if disclosed to the public, would amount to a clearly unwarranted invasion of the privacy of any person." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 n.3 (1982) (emphasis in original). Whether disclosure is warranted under exemption 6 depends not on the purpose for which the document is requested, but on the nature of the document requested and its relationship to the basic purpose of the FOIA to open agency action to the light of public scrutiny. *See Batton*, 598 F.3d at 180.

### 3. Analysis

Here, Ms. Goodman's declaration discusses at length the FAA's *Glomar* response and its reasons for doing so under exemptions 6 and 7(C). *See* Doc. 81-2 at 16-22. Further, Plaintiff's request clearly seeks disclosure of personnel files related to another FAA trainee. Doc. 85-1 at 9. The existence or non-existence of the requested records could reveal personal information about whether Ms. Bostic filed an EEO complaint, possibly stigmatize her, and impinge on her privacy. *See Calle*, 2011 WL 3820577, at *7 (granting motion for summary judgment when government issued a *Glomar* response under exemption 6 in response to FOIA request for third-party information related to an FBI agent's alleged dismissal); *Ripskis v. Dep't of Housing and Urban Development,* 746 F.2d 1, 3-4 (D.C. Cir. 1984) (there is a general privacy interest in the personnel files of government employees).

On the other hand, no public interest is demonstrated here where it is equally apparent that Plaintiff is seeking this information to bolster a claim that he was wrongfully terminated. Moreover, Plaintiff's argument that Defendants publicly disclosed Ms. Bostic's EEO complaint by acknowledging his FOIA request in its log is unpersuasive. Doc. 85-1 at 37. Plaintiff's mere *allegation* in his FOIA request that the individual filed an EEO complaint is not equivalent to an

official or public admission, explicit or implicit, that documents related to such a complaint exist. *See Wilner*, 592 F.3d at 68. Additionally, Plaintiff cites no authority in support of his argument that a *Vaughn* index is favored over a *Glomar* response. Indeed, the two procedures serve entirely different purposes.

Lastly, Plaintiff submits letters of support his family and friends wrote as evidence of a public interest in the disclosure of information to ensure the safety of the flying public. Plaintiff's letters are unpersuasive because Plaintiff "must establish more than a bare suspicion in order to obtain disclosure" and "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives and Records Admin. v. Favish,* 541 U.S. 157, 174 (2004); *see also McNamera v. U.S. Dep't of Justice,* 974 F.Supp.946, 960 (W.D. Tex. 1997) (compelling evidence is needed to establish that the agency is engaged in illegal activity and that the information sought is necessary in order to confirm or refute that evidence). In the absence of evidence meeting that standard here, the FAA properly withheld the requested information pursuant to exemption 6. And because such finding is determinative, the Court does not address whether the *Glomar* response was also proper under exemption 7(C).

Accordingly, Defendants are entitled to summary judgment with respect to FOIA request 9145.

**C. Defendants' Redactions in Response to FOIA 9143 are Proper**

    **1. Redactions to Inter-Agency Chart Under Exemption 5**

        **a. Parties' Arguments**

The FAA argues it properly redacted the preliminary findings column in an internal chart analyzing Plaintiff's EEO and Merit Systems Protection Board ("MSPB") complaints under

FOIA exemption 5 which governs the deliberative process privilege. Doc. 81 at 24; Doc. 81-2 at 47-49. The FAA asserts that the chart is an inter-agency record prepared by an FAA Academy manager that contains pre-decisional thoughts and deliberations about Plaintiff's EEO and MSPB claims against the FAA. Doc. 81 at 25.

In response, Plaintiff does not challenge the FAA's assertion that the chart is an inter-agency record, *see* Doc. 85-1 at 43; instead, he argues that "the FAA has not demonstrated that this information 'falls within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" Doc. 85-1 at 43 (citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Plaintiff asserts that Ms. Goodman's declaration is not sufficient proof that the documents are pre-decisional. Doc. 85-1 at 48.

### b. Applicable Law

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Accordingly, the exemption extends to any document covered by the agency's civil discovery privileges, such as attorney-client privilege, attorney work-product privilege, and the deliberative process privilege. *Gahagan v. United States Citizenship & Immigration Servs.*, 147 F.Supp.3d 613, 629 (E.D. La. 2015). The deliberative process privilege only applies to documents that are pre-decisional (generated before the adoption of an agency policy or action) and deliberative (reflecting the give-and-take of the consultative process). *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

### c. Analysis

The Court finds that the information contained in the preliminary findings column is pre-decisional because it was created prior to the FAA's final decision regarding Plaintiff's EEO and MSPB claims. *See* Doc. 81-2 at 26 ("These preliminary findings by no means constitute any final agency determination on any issue related to the EEO or MSPB claim; rather, the chart is one of the first steps in the process of determining how the agency will respond to the claim."). The preliminary findings column is also deliberative because "it reflects the give-and-take of the [FAA's] consultative process." *Highland*, 408 F.Supp.3d at 815 (citation omitted). Ms. Goodman's declaration, which the Court has already found to be competent, uncontroverted summary judgment evidence, states that the preliminary findings column reflects the FAA Academy Manager's initial research, determinations, and "judgment calls about what information is pertinent relative to the claimant's allegations," and is used to educate the complainant's manager in preparation for participating in alternative dispute resolution proceedings. Doc. 81-2 at 27.

Accordingly, the Court finds that Defendants properly redacted the preliminary findings column under the deliberative process privilege and therefore exemption 5.

### 2. Redactions to Employee "Chat" Under Exemption 6

#### a. Parties' Arguments

As relevant here, the FAA argues it properly redacted Plaintiff's classmates' test scores (but not their names) from an employee "chat" under exemption 6.[3] Doc. 81 at 27. In response, Plaintiff contends that exemption 6 does not apply because "[r]eleasing trainees' scores while

---

[3] Plaintiff does not challenge the FAA's other redactions under exemption 6 to the chat. *See* Doc. 85-1 at 50-51.

redacting their names does not ultimately cause any privacy violation." Doc. 85-1 at 51. Plaintiff also argues his classmates' test scores shed light on how the FAA conducts its business or carries out its mission because "they reveal empirical measures of trainees' collective performance." Doc. 85-1 at 51.

### b. Applicable Law

In addition to the exemption 6 standard set out above, "[t]he Supreme Court has narrowly defined the 'public interest' relevant to exemption 6 balancing as 'the extent to which disclosure would serve the core purpose of . . . FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government.'" *Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 361 (5th Cir. 2001) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)). Information that informs the public about "an agency's performance of its statutory duties falls squarely within [FOIA's] purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *U.S. Dep't of Def.*, 510 U.S. at 495-96 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). The requester's stated intentions or purposes are irrelevant; rather, "courts must consider only whether the requested information sheds light on agency action," *Sherman*, 244 F.3d at 362, or whether the "addition of the redacted identifying information would . . . shed any *additional* light on the Government's conduct of its obligation." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (emphasis added).

### c. Analysis

Here, the employee chats at issue reference test scores relative to individuals' performances, rather than any assessment of the agency's performance; thus, exemption 6

12

applies. *See* Doc. 81 at 27; *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (exemption 6 covers information "easily traceable to individuals"). *Washington Post Co.,* 456 U.S. at 600. There is some merit to Plaintiff's argument that there is no privacy concern if his classmates' names are redacted but their scores are not since presumably the scores would then not be easily traceable. However, Plaintiff nevertheless fails to establish a *public* interest in his classmates' test scores that outweighs their privacy interests to the comparable data. *U.S. Dep't of Def.*, 510 U.S. at 495–96 (explaining that the FOIA's basic policy of full agency disclosure is "not fostered by disclosure of information about private citizens that . . . reveals little or nothing about an agency's own conduct."). Indeed, "[e]ven a 'minimal' privacy interest in . . . an [individual]'s name and home address outweighs a nonexistent public interest." *Fed. Labor Relations Auth. v. U.S. Dep't of Def., Army & Air Force Exch. Serv., Dallas, Tex.*, 984 F.2d 370, 375 (10th Cir. 1993). As stated above, Plaintiff's interest in the test scores of his classmates is decidedly personal. Moreover, exemption 6 protects personal information and comparable data, even if it is not embarrassing or of an intimate nature. *See Washington Post Co.*, 456 U.S. at 600.

Accordingly, the FAA is entitled to summary judgment on this issue as well.

**D. Defendants' Redactions in Response to FOIA 9192 Under Exemption 2 are Proper**

    **1. Parties' Arguments**

The FAA argues it properly redacted Plaintiff's evaluation worksheets and the FAA's testing data for its ATC simulator software for trainees under exemption 2 because the information "relate[s] solely to the internal personnel rules and practices of an agency." Doc. 81 at 30 (citing *Milner*, 562 U.S. at 570). The FAA maintains that producing this information would essentially provide Plaintiff with the "answer key" to the FAA's simulator training

program and could allow future test-takers to circumvent the training program to the peril of the flying public. Doc. 81 at 33-34.

In response, Plaintiff contends that it is unlikely the FAA still utilizes the same testing scenarios as it did when he took the ATC test and, in any event, "[t]he only acceptable redactions under [e]xemption 2, according to post-*Milner* case law, is 'Low 2' information," which relates solely to matters of human resources. Doc. 85-1 at 55-56.

### 2. Applicable Law

Exemption 2 provides that FOIA "does not apply to matters that are . . . related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Pre-*Milner*, two categories of documents fell under exemption 2: "Materials concerning human resources and employee relations (referred to as 'Low 2'), and predominantly internal materials whose disclosure would significantly risk circumvention of agency regulations or statutes (referred to as 'High 2')." *Stein v. U.S. Dep't of Justice*, 134 F.Supp.3d 457, 470 (D.D.C. 2015). In *Milner*, the Supreme Court concluded "that Low 2 is all of [exemption] 2 (and that High 2 is not 2 at all)." *Milner*, 562 U.S. at 571. The Supreme Court reasoned that an agency's "personnel rules and practices" are those that deal with employee relations or human resources, noting that "all the rules and practices referenced in [e]xemption 2 share a critical feature: They concern the conditions of employment in federal agencies—such matters as hiring and firing, work rules and discipline, compensation and benefits." *Id.* at 570.

### 3. Analysis

Here, the Supreme Court's opinion in *Milner* makes clear that the FAA's evaluation worksheets regarding Plaintiff and ATC simulator testing data are solely personnel records, given that the worksheets contain "evaluations of [employees'] work performance" and concern

14

"the selection, placement, and training of employees" and "employee relations or human resources," including "such matters as hiring and firing." *Milner*, 562 U.S. at 569-70; *Stein*, 134 F.Supp.3d at 471 (granting motion for summary judgment because employee evaluation forms are exempt from disclosure under FOIA exemption 2); *see* Doc. 81-2 at 34 ("The records at issue are records revealing key aspects of assessments provided to [ATC] trainees; these tests are essential to evaluating these employees' performance and knowledge of skills needed to perform their future job duties; these tests determine whether these newly-hired temporary employees can remain employed at the FAA and move on to the next phase of their training.").

Accordingly, the Court finds that the FAA satisfied its summary judgment burden with respect to the redactions of Plaintiff's evaluation worksheets and the FAA's testing data for its ATC simulator software under exemption 2. Doc. 81 at 30.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' *Motion for Summary Judgment*, Doc. 80, should be **GRANTED**.  As no claims will remain, the Clerk of the Court should be instructed to close this case.

**SO RECOMMENDED** on April 27, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

15

**INSTRUCTIONS FOR SERVICE AND NOTICE OF**
**RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).