IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

HAROLD EDWARD RUTILA, IV,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION; FEDERAL
AVIATION ADMINISTRATION,

        Defendants.

Civil Action No. 3:16-CV-02911-B-BK
Civil Action No. 3:16-CV-3433

**DEFENDANTS' BRIEF IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

CHAD E. MEACHAM
United States Attorney

Mary M. (Marti) Cherry
Assistant United States Attorney
Texas State Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, TX  75242
Telephone:  214-659-8600
Facsimile:  214-659-8807
E-mail:  mary.cherry@usdoj.gov

*Attorneys for Defendants*

**Table of Contents**

I.     Summary of the argument.................................................................................1

II.    Background .....................................................................................................2

       A.     *Rutila I* FOIA requests .........................................................................3

              1.     Rutila seeks Academy SOPs (FOIA 9149) .................................3

              2.     Rutila seeks ADACEL Technologies emails (FOIA 9151) ..............6

       B.     *Rutila II* FOIA requests .......................................................................9

              1.     Rutila seeks Academy Air Traffic Information (FOIA 803) ............9

              2.     Rutila seeks Madeline Bostic records (FOIA 862) ........................12

              3.     Rutila seeks Mitchell's Computer File Structure (FOIA 1174).......17

III.   Argument and Authorities.............................................................................19

       A.     Legal Standards ...................................................................................19

              1.     Summary judgment standard......................................................19

              2.     Exhaustion of remedies .............................................................20

       B.     Rutila's challenges to three requests should be dismissed for failure
              to exhaust administrative remedies. ......................................................22

              1.     Rutila did not agree to pay the fee to search for Academy
                     SOPs (FOIA 9149). ...................................................................22

              2.     Rutila's requests for Bostic and Mitchell records (FOIA 862
                     and 1174) are not proper FOIA requests.....................................23

       C.     Rutila's challenges to the two remaining requests should be
              dismissed because the FAA conducted an adequate search.......................28

              1.     The agency conducted an adequate search for ADACEL
                     Technologies emails (FOIA 9151)................................................31

              2.     The agency conducted an adequate search for Air Traffic
                     Information (FOIA 803)..............................................................34

IV.    Conclusion ...................................................................................................36

# Table of Authorities

## Cases

*Alyeska Pipeline Serv. Co. v. U.S. EPA*,
  856 F.2d 309 (D.C. Cir. 1988) ............................................................................. 20

*Am. Fed. Gov't Emps., Local 2782 v. Dep't of Commerce*,
  632 F. Supp. 1272 (D.D.C. 1986) ...................................................................25–26

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................ 19

*Arledge v. Internal Revenue Serv.*,
  No. 3:18-CV-0899-G, 2018 WL 5312788 (N.D. Tex. Oct. 26, 2018).................. 21

*Batton v. Evers*,
  598 F.3d 169 (5th Cir.2010).........................................................................29–30

*Brown v. Perez*,
  835 F.3d 1223 (10th Cir. 2016) .......................................................................... 27

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................19–20

*Dale v. I.R.S.*,
  238 F. Supp. 2d 99 (D.D.C. 2002) ...................................................................... 24

*Flightsafety Servs. Corp. v. Dep't of Lab.*,
  326 F.3d 607 (5th Cir. 2003).............................................................................. 26

*Freedom Watch, Inc. v. Cent. Intelligence Agency*,
  895 F. Supp. 2d 221 (D.D.C. 2012) ...............................................................24–25

*Freedom Watch, Inc. v. Dep't of State*,
  925 F. Supp. 2d 55 (D.D.C. 2013) ...........................................................21, 24, 28

*Harris v. Freedom of Info. Unit Drug Enforcement Admin.*,
  No. CIV.A.3:06-CV-0176-R, 2006 WL 3342598
  (N.D. Tex. Nov. 17, 2006)...........................................................................21, 27–28

*Hedley v. United States*,
  594 F.2d 1043 (5th Cir. 1979) (per curiam).........................................21, 26–27, 29

*In re Clinton*,
    973 F.3d 106 (D.C. Cir. 2020) ........................................................................ 29–30

*Judicial Watch, Inc. v. Export-Import Bank*,
    108 F. Supp. 2d. 19 (D.D.C. 2000) ........................................................................ 28

*Kemmerly v. U.S. Dep't of Interior*,
    430 F. App'x 303 (5th Cir. 2011).......................................................................... 21

*Kemmerly v. U.S. Dep't of Interior*,
    Civ. A. No. 06-2386, 2006 WL 2990122 (E.D. La. Oct. 17, 2006)....................... 21

*Kessler v. United States*,
    899 F. Supp. 644 (D.D.C. 1995) ...................................................................... 22, 24

*Latimer v. Smithkline & French Labs.*,
    919 F.2d 301 (5th Cir.1990) .................................................................................. 19

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir.1994) .................................................................................. 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................. 20

*Miller v. U.S. Dep't of State*,
    779 F.2d 1378 (8th Cir.1985) ................................................................................ 20

*Morgan v. Fed. Bureau of Investigation*,
    No. A-15-CA-1255-SS, 2016 WL 7443397 (W.D. Tex. May 24, 2016) ............. 33

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000) ................................................................................ 20

*Negley v. Fed. Bureau of Investigation*,
    589 F. App'x 726 (5th Cir. 2014.)....................................................... 30, 32–34, 36

*NLRB v. Sears, Roebuck Co.*,
    421 U.S. 132 (1975) .............................................................................................. 26

*Oglesby v. U.S. Dep't of the Army*,
    920 F.2d 57 (D.C. Cir. 1990) ............................................................................... 32

*Pollack v. U.S. Bureau of Prisons*,
    879 F.2d 406 (8th Cir.1989).................................................................................. 20

*Ragas v. Tennessee Gas Pipeline Co.*,
    136 F.3d 455 (5th Cir.1998) ................................................................ 20

*Ryan v. Fed. Bureau of Investigation*,
    113 F. Supp. 3d 356 (D.D.C. 2015) ........................................... 30, 32–33

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................. 29, 32, 34

*Salanitro v. U.S. Office of Personnel Mgmt., Ret. Operations Div.*,
    No. 3:10-CV-363-J-32JBT, 2011 WL 2670076 (M.D. Fla. July 8, 2011) ............. 28

*Span v. U.S. Dep't of Justice*,
    696 F. Supp. 2d 113 (D.D.C. 2010) ....................................................... 33

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ............................................................. 25

*Taylor v. U.S. Treasury Dep't*,
    127 F.3d 470 (5th Cir.1997) ............................................................ 21, 27

*Voinche v. F.B.I.*,
    999 F.2d 962 (5th Cir.1993) ............................................................ 21, 26

*Wilson v. U.S. Dep't of Transp.*,
    730 F. Supp. 2d 140 (D.D.C. 2010) ...................................................... 28

*Yeager v. DEA*,
    678 F.2d 315 (D.C. Cir. 1982) ............................................................. 26

**Statutes, Rules, and Other Authorities**

5 U.S.C. § 552 ..................................................................................... 21

5 U.S.C. § 552(a) ................................................................................... 1

5 U.S.C. § 552(a)(3)(A) ......................................................................... 21

Fed. R. Civ. P. 56 ............................................................................ 1, 20

# I.    Summary of the argument

This Court should grant summary judgment in favor of the agency regarding Plaintiff Harold Rutila's challenges to the Federal Aviation Administration's (FAA) responses to five (5) FOIA requests under the Freedom of Information Act (FOIA), 5 U.S.C. § 522(a).  The Court dismissed these five claims for lack of subject matter jurisdiction, but Rutila appealed, and the claims were remanded.[1]  (Docs. 70, 73.) Defendants now move for summary judgment.

The agency complied with FOIA when it responded to Rutila's FOIA requests.  As set forth in the agency's declarations, attached to this motion, Rutila submitted three requests that were not perfected.  FOIA does not require an agency to search for documents when a requester does not submit a proper or "perfected" FOIA request, which is precisely what occurred with three requests.  For the remaining two requests, the FAA properly and extensively searched for and produced all documents, withholding none.  Rutila has presented no evidence to the contrary.  This Court should grant summary judgment in favor of Defendants under Federal Rule of Civil Procedure 56.

---

[1] Although Rutila's claims were remanded, dismissal was appropriate in the first instance for failure to state a claim, which the Fifth Circuit recognized as a viable theory (Docs. 39, 51), taking "no position on the merits of the FAA's [alternative] 12(b)(6) motion to dismiss, which the district court [could] consider in the first instance on remand."  (Doc. 96.)  Rutila's claims are properly dismissed for failure to state a claim as previously urged by Defendants, particularly with regard to three improper requests.  (Docs. 40, 52.)  With regard to the other two requests, for which the agency produced all documents and withheld none, these claims are also subject to dismissal for failure to state a claim.  Rutila challenges the adequacy of the search but does not provide a single fact to support his allegations.  His "naked" challenges do not meet his burden to allege that the agency's search was, or even might be, inadequate.  (Doc. 40 at 13–14.) In any event, the agency now attaches declarations, explaining its non-production (3 requests) and its searches (2 requests) to support summary judgment in its favor on the five remaining claims.

## II.    Background

This case arises out of Rutila's failure to pass his air traffic controller training

program at the Federal Aviation Administration (FAA).  (Doc. 81 at 2–3; App'x 4–5.)

As a result, he was not retained as a permanent air traffic controller.  ((Doc. 81 at 3;

App'x 4–5.)  Rutila submitted multiple FOIA requests to the FAA for information related

to himself, other class participants, FAA employees, and/or air traffic controller tests and

testing.  (App'x 5; *see also* Doc. 64 at 2–3, summarizing the requests.)  Dissatisfied with

the FAA's initial responses and/or the timing of those responses, Rutila filed two lawsuits

against the FAA and the United States Department of Transportation in 2016—before

exhausting his remedies—under a theory of constructive exhaustion.[2]  (Doc. 3; *Rutila II*,

Doc. 3.)

In January 2017, after Rutila had filed both lawsuits, the FAA advised Rutila that

it had responded to multiple requests near the time that Rutila filed his first lawsuit.

(Doc. 35-2 at 93.)  Rutila's appeal rights had expired for many requests in *Rutila I*, but

the FAA allowed Rutila to pursue an appeal.  (*Id*. at 93–94.)  The agency addressed his

challenges in the administrative appeal process while the federal lawsuits were pending.

There are five remaining claims at issue, two from *Rutila I* and three from *Rutila*

*II*.  The operative complaint in *Rutila I* is the third amended complaint (Doc. 35-1), which

concerns Rutila's request for Academy SOPs (FOIA 9149) and ADACEL emails (FOIA

---

[2] Rutila filed two lawsuits before completing the administrative process in 2016: the first-filed lawsuit, No. 3:16-CV-2911-B filed in October 2016 (*Rutila I*), and a second lawsuit, No. 3:16-CV-3433 filed in December 2016 (*Rutila II*).  The cases were consolidated in this Court on October 12, 2017.  (Doc. 56, *see also Rutila II*, Doc. 28.)  All docket citations refer to *Rutila I*, unless identified as *Rutila II*.

9151).  The operative complaint in *Rutila II* is the first amended complaint (*Rutila II*, Doc. 24-1), which concerns Rutila's requests for Academy Air Traffic Information (FOIA 803), Bostic records (FOIA 862) and Mitchell Computer structure (FOIA 1154).

## A.    *Rutila I* FOIA requests

### 1.    Rutila seeks Academy SOPs (FOIA 9149)

One of the claims at issue in Rutila's first-filed suit arises from a FOIA request he made for documents related to the FAA's Academy Quality Assurance standard operating procedures (SOPs), which request the FAA identified as FOIA request 2016-009149 ("9149").  (Docs. 35-1 at 12–18; 35-2 at 18.)  Four days after this request was submitted in September 2016, the FAA responded by requesting further clarification of the time frame for which documents were requested.  (Doc. 35-2 at 22.)  Rutila replied that he was seeking the most current version of the SOPs plus relevant notices and supplements concerning evaluation procedures, methods, and guidance for the preceding 12 months.  (Doc. 35-2 at 22.)  A few days later, on September 16, 2016, Rutila added that he was seeking documents related to conducting and/or grading evaluations and related emails and was willing to pay only $25 for this search.  (Doc. 35-2 at 27.)

On October 7, 2016, the FAA generally estimated that the cost to perform this search was at least $1,500 and asked Rutila what he was willing to pay.  (Doc. 35-2 at 27–28, 39–40.)  Later that day, the FAA provided a specific fee estimate of $2,570.  (Doc. 35-2 at 39, 44.)  In response, Rutila argued that the FAA's response was overdue and that he was not required to pay fees.  (Doc 35-2 at 45.)  Rutila maintained that if the

FAA did not concur with his interpretation, then Rutila would seek "judicial review."
(Doc 35-2 at 45.)

On October 12, 2016, the FAA explained that its response was not overdue—the
20-day clock had stopped because the parties were conferring about the scope of the
request and associated fees. (Doc. 35-2 at 46.) The FAA's clock did not begin on
September 7, 2016 when Rutila submitted his request to the FAA's FOIA website. (*Id*.)
The 20-day clock would expire on October 17, 2016. (*Id*.)

On October 13, 2016, the FAA and Rutila continued to dispute whether the FAA's
response was past due. (Doc. 35-2 at 47–49.) Rutila argued that the clock started when
"the FAA" received the request, and that if the FAA did not process his request with a
waiver of fees, Rutila would seek "judicial review." (Doc 35-2 at 47.) The FAA again
explained, however, that the clock begins when the request is received by the
"appropriate component" within the FAA (in this case, the Academy). (Doc. 35-2 at 48.)
The response deadline was October 17, 2016. (Doc. 35-2 at 48.) Rutila disagreed,
stating that the FAA was "unwilling to adopt [his] interpretation" of the statute, and that
he would file suit "unless the FAA agrees by Friday to process this request with a waiver
of fees."[3] (*See* Doc. 35-2 at 49.)

The FAA then emailed and mailed a formal letter to Rutila on October 13, 2016,
explaining that his request was not perfected and was being placed in abeyance pending

---

[3] Rutila threatened to sue the FAA three times if it did not waive all fees to perform the search. (*See* Doc.
35-2 at 45, 47, 49.)

Rutila's good faith agreement to pay the associated fees.  (Doc 35-2 at 50–51.)  Three days later, Rutila filed his first lawsuit, *Rutila I* on October 17, 2016, challenging the FAA's alleged untimely responses to this and multiple other FOIA requests.  (Doc. 3.)

Six months later, in response to Rutila's administrative appeal, the FAA further explained that one office, the Air Traffic Organization, did not search for Academy SOPs because it did not maintain the requested documents, and therefore was not the proper recipient of his request.  (Doc. 35-2 at 217.)  The FAA also explained that Rutila was not entitled to an administrative appeal because he did not agree to the fees.  (*Id*.)  The Academy also did not search for these records because Rutila did not provide written agreement to the fee assessment.  (*Id*.)

In this lawsuit, Rutila continues to challenge the FAA's administrative response regarding FAA's response to his request for Academy SOP's.  (Doc. 35-1 at 12–18.)  He argues the FAA must waive the fees because its response was purportedly overdue.  (Doc. 35-1 at 18, ¶ 157.)  Rutila asks the Court to review the adequacy of the agency's search—even though no search was performed—and order Defendants to process his request without charging fees.  (Doc. 35-1 at 18, ¶¶ 158–59.)

FAA employees Dedra Goodman and Edward Drake provide further clarification regarding the timing of the agency's request for fees related to FOIA 9149.  (App'x 1–42; 112–22.)  Rutila appeared to argue on appeal that he perfected his request on September 11 and that the FAA's response deadline had passed before the FAA requested fees on

October 7, 2016.[4] (App'x 15; 118–20.)  However, under the FOIA and FAA regulations, the 20-day response deadline does not begin until the date the request is _perfected_. (App'x 8–12.)  The FAA explains that Rutila's request had been received by the Academy and was perfected on Friday, September 16, 2016.  (App'x 16, 120.)  The agency's deadline to respond to this request expired, due to an intervening holiday, on October 17, 2016.  (App'x 8–12, 16, 120–21.)  The FAA _timely_ requested fees to search for the requested Academy SOPs on October 7, 2016, five business days before that deadline.  (App'x 16, 120–121.)  Because Rutila refused to agree to pay the fee, his request was properly held in abeyance pending his agreement to pay the estimated $2,500 search fee.  (App'x 121–22.)

### 2. Rutila seeks ADACEL Technologies emails (FOIA 9151)

Another _Rutila I_ FOIA request at issue is a request the FAA identified as 2016-009151 ("9151").[5] (Doc. 35-1 at 21–26, Doc. 35-2 at 61, 63.)  In FOIA 9151, Rutila requests emails between the FAA and ADACEL Technologies, which Rutila avers provides flight simulators to the FAA.  (_Id_.)  On October 12, 2016, the Academy issued a "no records" response, advising that it did not find any records.  (Doc. 35-2 at 144; _see also_ Doc. 41-1 at 7–8 (summary of requests.)  Rutila challenged this response in his first lawsuit filed a few days later, on October 17, 2016.  (Doc. 3.)  Several months later, on

---

[4] Defendants disagree that the agency's deadline had passed before the agency requested fees on October 7, 2016, even under Rutila's argument that he perfected his request _before_ September 16, 2016.  But as explained by the FAA, Rutila's calculation of the 20-day response deadline is incorrect.

[5] A synopsis of the procedural background for all _Rutila I_ requests is attached to Defendants' motion to dismiss.  (Doc. 41-1 at 7–8.)

January 4, 2017, a different office, the Air Traffic Organization, found and produced two records.  (Doc. 35-2 at 150.)

Rutila submitted separate administrative appeals, challenging these two offices' responses, explaining his belief that Brent Johnston would likely have responsive records.  (Doc. 35-2 at 147–48, 152–53.)  Johnston, a contract field service representative who oversaw the equipment and software owned or supported by ADACEL, was managed by the Air Traffic Organization (not the Academy).  (App'x 33.)

The FAA provided a combined response to Rutila's administrative appeals on May 30, 2017.  (Doc. 35-2 at 219–21.)  The Air Traffic Organization (ATO) had already produced two records, but it conducted additional searches based on the information Rutila provided.  (Doc. 35-2 at 220).  ATO found and produced one more record and a missing page from the first production.  (Doc. 35-2 at 220.)  The Academy also conducted an additional search and located two emails.  (Doc. 35-2 at 220.)  Both the ATO and the Academy produced all newly-located records in full, without redaction.  (*Id.*)

Despite multiple searches and production of all documents, Rutila challenges the FAA's administrative responses.[6]  (Doc. 35-1 at 21–24.)  Rutila "disputes that the search performed by the FAA is adequate and seeks judicial review of Defendants' response."  (Doc. 35-1 at 24, ¶ 223.)  His reasons for the dispute include "those in his appeal along

---

[6] The FAA produced documents based on these additional searches on May 30, 2017, and Rutila filed his third amended complaint on July 4, 2017.  (Doc. 35-1.)

with others as a response to new revelations made by the response from Defendant."
(Doc. 35-1 at 24, ¶ 224.)  Rutila does not explain what "new revelations were made" or
how the FAA did not conduct an adequate search.  He does not explain what the FAA
should have done differently or identify any concerns that the FAA did not address in the
administrative appeal.

In support of summary judgment, Ms. Goodman explains the FAA's email
systems(s), its process when searching for emails, its multiple communications with
relevant (or potentially relevant) organizations within the FAA, and its searches for FAA
emails with ADACEL Technologies  (App'x 12–13, 26–36.)  At that time, individual
custodians searched their own email files in their Outlook accounts or, if appropriate, in
the Proofpoint archive system.  (App'x 12–13.)

In response to the initial request, Academy employees in the AMA-500 division
did not expect to find any emails, but they searched their emails and found no documents.
(App'x 27–28.)  Based on communications with Academy staff, the FAA also contacted
another division of the Academy, AMA-900.  AMA-900 employees also searched their
Outlook folders and found no responsive documents.  (App'x 28–29.)

After further investigation, the FOIA manager followed up with the ATO, and
determined that the Tower Simulation System (TSS) office may have documents.  (App'x
29–30.)  The manager of the TSS office would have been included on all
communications with ADACEL, and thus, this manager searched his Outlook email.
(App'x 30.)  He found two responsive documents, which were produced in full.  (App'x
29–30.)

The, based on information that Rutila provided in his administrative appeal, the Academy and ATO conducted additional searches for emails to or from Brent Johnston, the contractor, and tasked Mr. Johnston with searching his email.  (App'x 31–34.)  Two additional documents and a missing page were located and produced.  (App'x 33–34.)  The FAA explains that it has searched in all locations that it reasonably believes documents might be located and has produced all documents located.  (App'x 35–36.)  The FAA is not aware of any additional offices that might maintain responsive documents.  (App'x 35–36.)

## B.     *Rutila II* FOIA requests

In the first amended complaint, Rutila challenges the three additional FOIA requests in the second-filed lawsuit, including Academy Air Traffic Information (FOIA 803), Madeline Bostic records (FOIA 862), and Rick Mitchell Computer File Structure (1174).  (*Rutila II*, Doc. 24-1 at 3–13.)

### 1.     Rutila seeks Academy Air Traffic Information (FOIA 803)

On October 27, 2016, Rutila requested Academy Air Traffic Information, which the FAA identified as FOIA 2017-000803 ("803").  (*Rutila II*, Doc. 24-2 at 2, 6.)  This request sought "duties and responsibilities" of three Air Traffic sections:  Enroute, Terminal Radar Operations, and Tower.  (*Rutila II*, Doc. 24-2 at 2.)

The FAA and Rutila discussed the scope of this request until November 30, 2016.  (*Rutila II*, Doc. 24-2 at 10–22.)  Rutila clarified that he sought records that establish the purpose, including the duties and responsibilities, of the Enroute, Terminal Radar Operations, and Tower sections and units of the Air Traffic Training Branch, as well as

the purpose, including duties and responsibilities, of the employees who work within those sections and units.  (*Rutila II*, Doc. 24-2 at 13.)

The FAA responded that it had identified an "Air Traffic Technical Training work instruction" that "speaks to the core functions of the Air Traffic Division, AMA-500 of the FAA Academy."  (*Rutila II*, Doc. 24-2 at 19.)  The FAA understood that this document appeared responsive to his request for information regarding these three Air Traffic sections and asked Rutila to confirm that this is what he was seeking.  (*Rutila II*, Doc. 24-2 at 19–20.)  In response, Rutila advised that he also wanted position description documents.  (*Rutila II*, Doc. 24-2 at 22.)

A week later on December 8, 2016, an FAA employee advised that the FAA was reviewing the "Air Traffic Training Manual" and position descriptions for release.  (*Rutila II*, Doc. 24-2 at 26.)  On December 14, 2016, the FAA produced in full the 6-page Air Traffic Technical Training work instruction and 81 pages of position descriptions for a total of 87 pages of documents.  (*Rutila II*, Doc. 12-1 at 3–4, 16.)  Rutila filed his second lawsuit the following day, December 15, 2016.  (*Rutila II*, Doc. 3.)

While the *Rutila II* case was pending, Rutila submitted an administrative appeal, challenging the adequacy of the search and alleging the FAA did not include a copy of the "Air Traffic Training Manual" that the FAA employee had mentioned.  (*Rutila II*, Doc. 12-1 at 5.)  In response, the FAA advised on April 24, 2017 that a document named Air Traffic Training Manual does not exist, but that the document that Rutila apparently had in mind had a different name, the Air Traffic Technical Work Instruction, and it had in fact been produced.  (*Rutila II*, Doc. 12-1 at 15–16.)

Amending his complaint on September 25, 2017, Rutila continues to challenge the

FAA's response.  (*Rutila II*, Doc. 24-1 at 3–7.)  Rutila acknowledges that the FAA's

administrative appeal response affirmed that the search was conducted adequately.

(*Rutila II*, Doc. 24-1 at 7, ¶ 46.)  But Rutila asks the Court to "order Defendant to

demonstrate an adequate search has been conducted through the filing of sworn

declarations."  (*Rutila II*, Doc. 24-1 at 7, ¶ 48.)  According to Rutila, the FAA "has the

burden to demonstrate that an adequate search has been conducted." [7]  (*Rutila II*, Doc. 24-

1 at 7, ¶ 49.)  However, in this amended complaint, Rutila does not specify any facts that

indicate why he contends the FAA's searches were actually inadequate – or what concern

he raised in the administrative appeal that had not been addressed by the FAA.

In support of this motion, Ms. Goodman explains the FAA's search for documents

responsive to the FOIA 803 request for Air Traffic Information.  (App'x 7, 36–42.)  The

FAA first explains that its employee inadvertently referred to a document as the "Air

Traffic Training Manual" when communicating with Rutila.  (App'x 37.)  With respect to

the position description documents Rutila requested, the FAA searched all places where it

---

[7] In his second-filed suit, Rutila initially alleged that Defendants violated FOIA (Count I) and the
Administrative Procedures Act (APA) (Count II), arguing the FAA failed to provide estimated
completion dates (even though he made his requests, for some FOIA requests, just hours before he filed
suit).  (*Rutila II*, Doc. 3 at 16-17; App'x 8.)  Rutila alleged the FAA has an arbitrary and capricious
policy, pattern or practice of refusing to provide estimated completion dates.  (*Rutila II*, Doc. 3 at 16-17).
Defendants moved for dismissal of the APA claim in its prior motion to dismiss (*Rutila II*, Doc. 11).
Even though Rutila's amended complaint alleges the FAA has an unlawful policy, pattern or practice of
violating FOIA (Doc. 24-1 at ¶¶ 35-37, 63-65, 88-90), he does not re-assert his APA claim but only an
alleged FOIA violation. (*Rutila II*, Doc. 24-1 at ¶¶ 103-10 (Count I).)  Defendants contend that Rutila has
abandoned any claim under the APA regarding estimated completion dates.  However, out of an
abundance of caution, Ms. Goodman explains that the FAA did not provide estimated completion dates to
Rutila in this case because Rutila filed a lawsuit within days of making his requests, before the agency
responded.  (App'x 8.)

reasonably believes any position descriptions would exist that are responsive to Mr. Rutila's request. (App'x 40.) The FAA produced all position descriptions located, and withheld none.

With regard to the nature of the request for organizational information, the FAA determined that the Academy does not possess documents that fit the exact description of what Mr. Rutila requested. (App'x 39.) However, the FAA located a document titled "Air Traffic Technical Training Work Instruction," which provides a functional statement for the Academy's Air Traffic Division in general. (App'x 39.) This is the only document that the FAA could determine was responsive to Rutila's request. (App'x 40.) The FAA searched all places where the FAA reasonably believes any responsive position descriptions or organizational documents exist. (App'x 40.)

Ms. Goodman again explains that Rutila's request for an "Air Traffic Training Manual" appeared to be his misunderstanding of the FOIA coordinator's informal or colloquial use of that term in email correspondence. (App'x 41.) However, the employee with relevant expertise who searched for these documents explained that the "Air Traffic Technical Training Work Instruction" is the only document responsive to his request. (App'x 41.) The FAA has searched all locations where it would reasonably expect to locate records responsive to FOIA 803 and has produced all documents and withheld none. (App'x 42.)

### 2.    Rutila seeks Madeline Bostic records (FOIA 862)

With regard to FOIA 862, Rutila is seeking FAA information technology system account records for a specific employee, Madeline Bostic. (Doc. 24-2 at 30.) The first

three items in this request seek "all BMC Remedy records for Madeline Bostic"; "all VMAT requests submitted for Madeline Bostic"; and "all emails . . . regarding Madeline Bostic." (*Id.*)  Items four and five seek a "[c]opy of the Active Directory Account Profile (all tabs) for Madeline Bostic"; and a "[c]opy of the NEXGEN Toolbox profile for Madeline Bostic." (*Id.*)

The FAA acknowledged receipt of this request on November 1, 2016, which it identified as 2017-000862 ("862"). (*Rutila II*, Doc. 24-2 at 33.).  At 10:18 a.m. on December 15, 2016, the FAA apologized for the delay in responding, explaining that the agency was considering how to respond. (*Rutila II*, Doc. 24-2, at 44.)  Rutila filed his second lawsuit the same day.[8] (*Rutila II*, Doc. 3.)

On February 6, 2017, Rutila purported to file an administrative "appeal," regarding the Bostic records, even though the FAA had not responded to this FOIA request. (*Rutila II*, Doc. 12-1 at 6–7.)  A few weeks later, the FAA provided its *initial* response, explaining that Rutila failed to submit a proper FOIA request. (*Rutila II*, Doc. 12-1 at 10–11.)  The first three items seeking all "BMC Remedy records for Madeline Bostic", "all VMAT requests submitted for Madeline Bostic" and "all emails . . . regarding Madeline Bostic" were overbroad and lacked specificity. (*Rutila II*, Doc.12-1 at 11.)  Items four and five seeking a copy of "the Active Directory Account profile" and "NEXGEN Toolbox profile for Madeline Bostic" would require the agency to create

---

[8] Rutila filed his first lawsuit on October 17, 2016 and the second lawsuit two months later, on December 15, 2016.  (Doc. 3, and *Rutila II*, Doc. 3.)

records, which FOIA does not require.  (*Id*.)  The FAA did not deny this request but administratively closed it, inviting Rutila to submit a properly-framed request.  (*Id*.)

In his first amended complaint filed on September 25, 2017, Rutila continues to challenge the FAA's response to this request.  (*Rutila II*, Doc. 24-1 at 8–10.)  He acknowledges the FAA's explanation that his request is overly broad and lacks specificity.  (*Rutila II*, Doc. 24-1 at 9, ¶ 71.  However, he "challenges the adequacy of the search" (even though no search was performed).  (*Id*. at 9, ¶ 72.)  He also challenges the FAA's interpretation that the request is not proper.  (*Id*. at 9, ¶ 73.)  Rutila does not explain in his amended complaint, however, why he did not reach out to the agency in an attempt to clarify his search.  Nor does he explain why he believes the request is sufficiently specific such that the agency should be able to perform a search.  In addition, Rutila does not explain any facts that suggest the documents related to computer profiles, including "screen shots" would in fact exist in the form of existing records and would not require the agency to create records.

In her declaration, Ms. Goodman explains the procedure for submitting a proper request and why this request for Bostic information is improper.  (App'x 6, 16–26.)  With regard to items 4–5—"the Active Directory Account profile" and "the NEXGEN Toolbox profile"— the FAA does not maintain a record of these profiles.  (App'x 18–19.)  The only way to produce these records would be to take a screenshot of the data.  (App'x 18–19.)  The FAA considers a screenshot to be the creation of a record, as they are not

records that the FAA already maintains, which is supported by existing case law.[9]
(App'x 19.)

With regard to the first three items—all BMC Remedy records for Madeline
Bostic"; "all VMAT requests submitted for Madeline Bostic"; and "all emails . . .
regarding Madeline Bostic"—the FAA explains that these requests are overly broad and
lack specificity.  (App'x 20–26.)

BMC Remedy is an information technology service management tool which
provides a ticketing system to track information technology helpdesk assignments.
(App'x 21.)  Upon receipt of a helpdesk request, BMC Remedy creates a ticket that keeps
track of the nature of the problem, system changes identified and, related problems, and
work order management.  (App'x  21.)  It does not produce documents, but it can export
and produce reports of data.  (App'x 23.)  However, this request seeks information not
only related to BMC remedy but also records *related to* BMC Remedy that *concern* Ms.
Bostic.  (App'x 21.)  The request does not identify any subject matter (topics) for
helpdesk tickets or identify a date range.  (App'x 22.)  It also appears to suggest that the
FAA must first search for all records in the BMC Remedy system for records "regarding"
Ms. Bostic and then conduct additional searches on all individuals who have any records
regarding Ms. Bostic's helpdesk tickets.  (App'x 22.)

The FAA determined that it could not reasonably discern from this request where
records would be located in order to conduct a search for these records, which renders the

---

[9] *See infra* at 26–27.

request improper.[10]  (App'x 22.)  Rutila's request for VMAT records was similarly

improper.[11]  (App'x 24–25.)

The final request for "all emails . . . regarding Madeline Bostic" was also

improper.  (App'x 20–21.)  At the time of this request, Ms. Goodman explains that the

FAA's search capabilities required individual custodians to search their own Outlook

email and, if necessary, a system called Proofpoint archive, for responsive records.

(App'x 12–13.)  This request did not identify any individual custodian who may have

documents responsive to this request.  (App'x 20.)  It also appeared to seek any IT

Helpdesk or IT service center emails within the FAA that *mention* Madeline Bostic.

(App'x 20.)  The request does not identify a specific IT point of contact or system, and

does not provide a date range for the records he seeks.  (App'x 20.)  The FAA explains

that it cannot reasonably determine all systems or other IT tools that Bostic might be

using or might have used in the past, locate all helpdesks or IT service centers associated

with those systems or tools, or determine which email custodians must search their email

accounts related to those IT service centers or helpdesks. (App'x 20–21.)  The FAA

determined that this request is also not a proper FOIA request because it does not

---

[10] During this litigation, the FAA attempted to search the BMC Remedy system for data regarding Ms. Bostic during the relevant time frame, even though the request was improper.  (App'x 22–24.)  However, no responsive data was found.  (App'x 24.)

[11] The FAA also explains that the request for records in the VMAT system was not a proper request for the same reason that the request for BMC Remedy records was improper.  (App'x 24–25.)  In addition, the VMAT system was decommissioned in 2014 when the FAA completed its transition from a Lotus Notes-based email system to a Microsoft Outlook email system.  (App'x 24.)  Even if it had been a proper request, Madeline Bostic joined the FAA in 2016, and therefore there would not have been any records related to Madeline Bostic in the VMAT system.  (App'x 25.)

reasonably describe the records sought in a way that would enable an FAA subject matter expert to understand what records are being sought and locate them with a reasonable amount of effort.  (App'x 21.)  The FAA administratively closed this request because it is improper.  (App'x 26.)  While Rutila states that his requests are proper FOIA requests, he has not explained why he believes they are proper or offered to clarify the requests. (App'x 26.)

### 3.    Rutila seeks Mitchell's Computer File Structure (FOIA 1174)

The fifth FOIA request at issue is Rutila's request for Rick Mitchell's Computer File Structure.  (*Rutila II*, Doc. 24-2 at 37.)  This request seeks a "copy of the directory or folder structure of Windows Explorer for all of Rick Mitchell's network drives and 'My Documents' folders," or "[a] screenshot or 'screencap,'" and was identified by the agency as 2017-0001174.  (*Rutila II*, Doc. 24-2 at 37, 40.)  On December 15, 2016, the FAA advised Rutila that it was considering how to respond, which again is the same day that Rutila filed his second lawsuit.  (*Rutila II*, Doc. 24-2, at 45.)

Similar to the request for Bostic records (862), Rutila then purported to file an administrative "appeal" regarding the request for Rick Mitchell's Computer File Structure (1174) on February 6, 2017, even though the FAA had not responded to this request.  (*Rutila II*, Doc. 12-1 at 8–9.)

When the FAA provided an *initial* response on February 27, 2017, it advised Rutila that his request for Rick Mitchell's Computer File Structure (1174) is not a proper or perfected FOIA request.  (*Rutila II*, Doc. 12-1 at 13–14.)  The FAA explained that it is

not required to "capture" screenshots or create agency records or to conduct research, analyze data, or answer questions when responding to requests. (*Rutila II*, Doc. 12-1 at 13.) The FAA did not deny the request but closed it. (*Rutila II*, Doc. 12-1 at 14.)

Rutila continues to challenge the FAA's response in this lawsuit. (*Rutila II*, Doc. 24-1 at 10–13.) Rutila acknowledges that the FAA advised that his request is not proper because FOIA does not require the FAA to create new records. (Doc. 24-1 at 12, ¶ 96.) However, Rutila challenges the "adequacy of the search" (even though no search was performed) and the FAA's interpretation that his request is not proper. (Doc. 24-1 at 12, ¶¶ 97–98.) Again, Rutila does not explain any facts that suggest the documents would in fact exist in the form of records and *would not* require the agency to create records, particularly because he patently states that the agency should take "screenshots" to produce this information. (*Rutila II*, Doc. 24-2 at 37.)

As with the request for Bostic records, Ms. Goodman explains that Rutila's request for Rick Mitchell's computer structure would require the agency to create records. (App'x 19.) The FAA does not maintain documents that reflect an employee's network drives, network directory, My Documents folder, or Windows Explorer folder structure as requested by FOIA 1174. (App'x 19.) The only way to provide this information would be to create a screenshot. (*Id.*) Therefore, the FAA determined that Rutila's request for Rick Mitchell's computer structure is improper and the FAA administratively closed this request. (App'x 19, 25–26.)

For each of these five requests, Defendants now move for summary judgment, seeking dismissal of Rutila's claims. As further explained below, three requests have not

been perfected and thus, Rutila has not exhausted his administrative remedies.  And the

FAA conducted adequate searches for the remaining two requests.  Rutila offers no

factual basis to challenge the adequacy of the searches that have not been addressed by

the FAA in the administrative process.  His challenges to the adequacy of the search for

these two FOIA requests, with no factual support, do not raise a genuine issue of fact that

the searches were inadequate.  Defendants seek summary judgment on all claims.

### III.    Argument and Authorities

**A.    Legal Standards**

**1.    Summary judgment standard**

Summary judgment is appropriate when the pleadings and record evidence show

that no genuine issue of material fact exists and that the movant is entitled to judgment as

a matter of law.  *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir.1994).  Only

disputes about material facts will preclude the court's granting summary judgment.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The burden is on the movant

to prove that no genuine issue of material fact exists.  *Latimer v. Smithkline & French

Labs*., 919 F.2d 301, 303 (5th Cir.1990).  If the non-movant bears the burden of proof at

trial, the summary judgment movant need not support his motion with evidence negating

the non-movant's case.  Rather, the movant may satisfy his burden by pointing to the

absence of evidence to support the non-movant's case.  *Little*, 37 F.3d at 1075.

Once the movant meets his burden, the non-movant must show that summary

judgement is not appropriate.  *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986)).  "[A properly supported summary judgment motion] requires the

nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248. The Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998).

A defendant in a FOIA suit is entitled to summary judgment if it establishes that it has fully discharged its obligations under the Act. *Pollack v. U.S. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir.1989) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir.1985)). As long as there are no material facts at issue and no facts "susceptible to divergent inferences bearing upon an issue critical to disposition of the case," summary judgment is appropriate. *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988). A properly supported motion for summary judgment is not defeated simply by a "bare opinion or an unaided claim that a factual controversy persists." *Id.*

## 2. Exhaustion of remedies

To sustain a claim for judicial remedy under the FOIA, a plaintiff must prove that

he properly and timely presented his FOIA request to the agency and that he exhausted

his administrative remedies prior to seeking judicial review.  *Voinche v. F.B.I.*, 999 F.2d

962, 963 (5th Cir.1993) (citing 5 U.S.C.A. § 552).  Exhaustion of administrative remedies

is a mandatory jurisdictional prerequisite to the commencement of a FOIA lawsuit.

*Arledge v. Internal Revenue Serv.*, No. 3:18-CV-0899-G, 2018 WL 5312788, at *2 (N.D.

Tex. Oct. 26, 2018) (citing *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979)

(per curiam)).

An agency's "obligation under FOIA begins only upon receipt of a valid request."

*Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 60 (D.D.C. 2013) (citation

omitted).  This requires a "request for records which (i) reasonably describes such records

and (ii) is made in accordance with published rules stating the time, place, fees (if any),

and procedures to be followed."  *Id*. (citing 5 U.S.C. § 552(a)(3)(A)).  The "description of

a requested document [sh]ould be sufficient [to] enable[ ] a professional employee of the

agency who was familiar with the subject area of the request to locate the record with a

reasonable amount of effort."  *Id*. at 61.

A petitioner who fails to submit a proper FOIA request according to agency

regulations fails to exhaust his administrative remedies.  *See Harris v. Freedom of Info.*

*Unit Drug Enforcement Admin.*, No. CIV.A.3:06-CV-0176-R, 2006 WL 3342598, at *4

(N.D. Tex. Nov. 17, 2006) (citing *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 474-75

(5th Cir.1997)).  Where a requester fails "to follow the procedures set forth in the agency

regulations, he has failed to make a proper request under the FOIA and therefore has

failed to exhaust his administrative remedies."  *Harris*, 2006 WL 3342598, at *6 (citing

*Kessler v. United States*, 899 F. Supp. 644, 645 (D.D.C. 1995)).  Submission of a

properly framed request is a necessary element of a requester's claim for judicial relief

under the FOIA.  *Id*. at *4.

**B.     Rutila's challenges to three requests should be dismissed for failure to exhaust administrative remedies.**

    **1.     Rutila did not agree to pay the fee to search for Academy SOPs (FOIA 9149).**

The FAA did not process or search for documents in response to Rutila's request

for Academy SOPs (FOIA 9149) because Rutila refused to agree to pay the fees.

Payment of fees is necessary to exhaust administrative remedies.  *Kemmerly v. U.S. Dep't*

*of Interior*, 430 F. App'x 303, 304 (5th Cir. 2011).  A plaintiff is obligated to pay the fee,

even if an assessment is subsequent to the filing of the lawsuit, as a jurisdictional

requirement.  *Kemmerly v. U.S. Dep't of Interior*, Civ. A. No. 06-2386, 2006 WL

2990122, at *2 (E.D. La. Oct. 17, 2006).  The government "has no further obligation" to

a plaintiff until the fees are paid or an appeal is taken from the refusal to pay fees.  *Id*.

Rutila does not dispute that he refused to agree to pay the fees.  Rather, he disputes

that the agency's 20-working-days to respond had expired, which he contends excused

his obligation to pay fees.  Rutila is incorrect.

As the FAA explains, its 20-day clock to respond begins when the request is

perfected.  (App'x 8–12.)  In this case, Rutila perfected his request on September 16,

2016, and the response period thus expired on October 17, 2016.  (App'x 15–16, 119–

20.)  The FAA issued an estimate of fees in the amount of $2,570 on October 7, 2016,

five business days before the FAA's response was due.  (App'x 120–21.)  Thus, the FAA

submitted a timely request for fees.  (App'x 15–16, 121.)

The FAA afforded Rutila an opportunity to narrow the scope of his request to reduce the estimated fees.  Instead of working with the agency to revise his request, Rutila chose to follow his own interpretation of FOIA, disagreeing with the FAA's interpretation and seeking "judicial review" under a theory of constructive exhaustion. (Doc. 35-1 at 2; Doc. 35-2 at 45, 47, 49.)  As set forth in the agency's declaration, Rutila's interpretation is incorrect.  Rutila failed to exhaust his administrative remedies because he did not agree to the fees, which bars his claim against the defendants.  *See Kemmerly*, 430 F. App'x at 305.

## 2. Rutila's requests for Bostic and Mitchell records (FOIA 862 and 1174) are not proper FOIA requests.

Rutila challenges the FAA's determination that the Bostic and Mitchell requests are not proper.  (*Rutila II*, Doc. 24-1 at 9, 12, ¶ 73, ¶¶ 97–98).  The first three items in the request for Bostic records seek "all BMC Remedy records for Madeline Bostic"; "all VMAT requests submitted for Madeline Bostic"; and "all emails . . . regarding Madeline Bostic."  (*Id*. at 30.)  Items four and five seek a "[c]opy of the Active Directory Account Profile (all tabs) for Madeline Bostic"; and a "[c]opy of the NEXGEN Toolbox profile for Madeline Bostic."  (*Id*.)  The request for Mitchell records seeks a "copy of the directory or folder structure of Windows Explorer for all of Rick Mitchell's network drives and 'My Documents' folders," or "[a] screenshot or 'screencap.'"  (*Id*. at 37.)

As the agency explains, however, three requests for Bostic records (FOIA 862(a)-(c)) are vague and lack specificity.  (App'x 20–25.)  The remaining requests for Bostic

records (FOIA 862 (d)-(e)) and Mitchell records (FOIA 1174) would require the agency

to create records, which the agency is not required to do.  (App'x 10, 18–19, 71–72, 81–

82.)  These requests are not proper FOIA requests.  (*Id.*)  After the FAA informed Rutila

of this fact, Rutila, who had already filed suit, did not confer with the agency but simply

amended his complaint "challenging Defendant's interpretation that [his] request is not

proper."  (Doc. 24-1, ¶¶ 73, 98.)  Because these requests are not perfected, however,

Rutila has failed to exhaust his administrative remedies.[12]

> ### a.    Three requests for Bostic records are overly broad and lack specificity (FOIA 862 (a)-(c)), which makes them improper requests.

"[I]t is the requester's responsibility to frame requests with sufficient particularity

to ensure that searches are not unreasonably burdensome, and to enable the searching

agency to determine precisely what records are being requested."  *Freedom Watch, Inc. v.*

*Cent. Intelligence Agency*, 895 F. Supp. 2d 221, 229 (D.D.C. 2012).  If the requester fails

to submit a proper request, it is as if he made "no request at all."  *Kessler*, 899 F. Supp. at

645.  An agency is under no obligation to release records that have not been reasonably

described.  *Dale v. I.R.S.*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002).  The linchpin inquiry is

---

[12] In response to Defendants' earlier motion to dismiss, Rutila argues that his request for Bostic records "*more than sufficiently* describes the records sought."  (Doc. 66 at 12.)  However, he does not provide any factual basis to support this contention or address the agency's response to this request.  For example, Rutila does not provide the names of custodians, identify a subject matter or topic, or explain how the agency is supposed to identify "related information" or conduct additional searches.  With regard to the Mitchell records, Rutila again contends, in a conclusory manner, that this request is sufficiently described.  (Doc. 66 at 13.)  Rutila does not, however, dispute that this request (and the other two categories of Bostic records) would require the agency to create records or any legal authority that suggests the agency must create records.  Rutila does not dispute that he declined the agency's offer to re-frame his requests but instead, chose to file suit.  Rutila has not explained to the Court or the FAA, after copious briefing, a factual or legal basis to support his position that he has submitted proper FOIA requests for Bostic or Mitchell records.

whether "the agency is able to determine precisely what records are being requested." *Id.* (citing *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997)).  The "reasonable description" requirement is satisfied if a professional employee of the agency who is generally familiar with the subject area can locate the requested records with a "reasonable amount of effort." *Am. Fed. Gov't Emps., Local 2782 v. Dep't of Commerce*, 632 F. Supp. 1272, 1278 (D.D.C. 1986).  "[B]road sweeping requests lacking specificity are not permissible." *Id.*

Rutila's request for Bostic records (FOIA 862(a)-(c)) seeks "all" BMC Remedy records, VMAT requests, and emails about Bostic.  The FAA explains that sections (a)-(c) are vague, lack specificity and are overly broad.  (App'x 20–25.)  The FAA explained in its initial response that "[r]equests for 'all emails', 'all records', or 'all correspondence' from a person or office or about a subject, without confining search parameters, are not considered to be proper if they do not specify a time period, or sufficiently defined subject matter to permit an adequate search."  (App'x 72.)  Requests like these, seeking "all" records that "relate to" a subject area are "inevitably 'subject to criticism as overbroad since life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion.'"  *See Freedom Watch, Inc.*, 925 F. Supp. 2d at 61.

In addition, Rutila's requests for "all" (1) BMC Remedy records and related information, (2) VMAT requests and related information, and (3) emails regarding Bostic do not explain the subject matter or topic to be searched, which FAA component (or office) should be searched, or a time frame for the records requested.  (App'x 20, 22, 25.) No VMAT records as requested in FOIA 862(b) *could* exist because the VMAT software

system was retired before Bostic joined the FAA.  (App'x 24–25.)  And Rutila does not

explain how the FAA should conduct additional searches on "all persons who come up

for this name" as requested in FOIA 862(b).  (App'x 22.)  Rutila also does not identify

any individual custodians who could search for email records "regarding Bostic" as

requested in FOIA 862(c).  (App'x 20.)  In short, these requests do not allow a

professional employee of the agency who is generally familiar with the subject area to

locate the requested records with a "reasonable amount of effort."  *See Am. Fed. Gov't

Emps., Local 2782*, 632 F. Supp. at 1278.

> **b.  Two subsections seeking Bostic records (FOIA 862(d)-(e)) and the Rick Mitchell request (FOIA 1174) would require the agency to create records, which makes them improper requests.**

FOIA 862 related to Madeline Bostic, subsections (d) and (e), seek a "[c]opy of

the Active Directory Account Profile (all tabs) for Madeline Bostic"; and a "[c]opy of the

NEXGEN Toolbox profile for Madeline Bostic."  (*Rutila II*, Doc. 24-2 at 30.)  In FOIA

1174 related to Rick Mitchell, Rutila seeks a "copy of the directory or folder structure of

Windows Explorer for all of Rick Mitchell's network drives and 'My Documents'

folders," or "[a] screenshot or 'screencap.'"  (*Id*. at 37.)

FOIA does not require an agency to create new records.  *Flightsafety Servs. Corp.

v. Dep't of Lab*., 326 F.3d 607, 613 (5th Cir. 2003) (citing *NLRB v. Sears, Roebuck Co*.,

421 U.S. 132, 161–62 (1975)); *see also Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir.

1982) ("It is well settled that an agency is not required by FOIA to create a document that

does not exist in order to satisfy a request.")

Rutila's request for Bostic's Active Directory Account "profile" and NEXGEN

Toolbox "profile" as well as Mitchell's Windows Explorer, network drives, or My

Documents folder, would require the FAA to create records.  These requests are clearly

improper.  *See Brown v. Perez*, 835 F.3d 1223, 1237 (10th Cir. 2016) (explaining that

FOIA did not require the agency to open software, input data, and create a screen image

to capture and produce).

As explained by the agency,

> [T]he FAA does not maintain documents that reflect an employee's
> network drives, network directory, My Documents folder, or
> Windows Explore folder structure as requested by FOIA 1174.
> The only way to provide the information Mr. Rutila requested in
> FOIA 862 parts (d) and (e)  or FOIA 1174 would be to take a
> screenshot of the data displayed on a screen.
>
> . . .
>
> However, the FAA considers a screenshot to be a creation of a
> record, as they are not records that the FAA already maintains.

(App'x 19, ¶¶ 61–62.)

Rutila's requests for two subsections of his request for Bostic records and his

request for Mitchell records are all improper requests.  Courts have explained that a

petitioner who fails to submit a proper FOIA request according to agency regulations

fails to exhaust his administrative remedies.  *See Harris*, 2006 WL 3342598, at *4 (citing

*Taylor*, 127 F.3d 474-75); *see id.* (explaining that submission of a properly framed

request is a necessary element of a requester's claim for judicial relief under the FOIA.)

*Id*. at *4.

Even if Rutila alleges that he constructively exhausted this claim, he has not

submitted proper requests or communicated with the agency during the pendency of this

lawsuit to clarify or re-frame these requests.  Instead, he simply demands "judicial

review."  But it is Rutila's responsibility to frame requests with sufficient particularity

that would enable the agency to search for documents.  *See Wilson v. U.S. Dep't of*

*Transp.*, 730 F. Supp. 2d 140, 150 (D.D.C. 2010) (citing *Judicial Watch, Inc. v. Export-*

*Import Bank*, 108 F. Supp. 2d. 19, 27 (D.D.C. 2000)); *see also Salanitro v. U.S. Office of*

*Personnel Mgmt., Ret. Operations Div.*, No. 3:10-CV-363-J-32JBT, 2011 WL 2670076,

at *1 (M.D. Fla. July 8, 2011) (rejecting constructive exhaustion theory because plaintiff

failed to submit a proper FOIA request and thus, failed to exhaust his remedies).  Rutila

failed to submit proper FOIA requests to trigger the agency's duty to respond.  Thus,

Rutila has not exhausted his remedies for these requests, which bars his claims against

Defendants.  *See Freedom Watch, Inc.*, 925 F. Supp. 2d at 60 (explaining that an

agency's obligation under FOIA only begins upon receipt of a valid request); *Harris*,

2006 WL 3342598, at *4 (explaining that a petitioner who fails to submit a proper FOIA

request fails to exhaust his administrative remedies).

## C.    Rutila's challenges to the two remaining requests should be dismissed because the FAA conducted an adequate search.

Rutila challenges the FAA's search for emails with ADACEL Technologies

(*Rutila I*, FOIA 9151) and Academy Air Traffic Information (*Rutila II*, FOIA 803).  The

FAA searched multiple offices, located records, and produced documents with its initial

responses.  (App'x 26–42.)  In response to Rutila's administrative appeal regarding

ADACEL emails, the FAA conducted additional searches, located additional records, and

produced additional documents.  (App'x 31–35.)  The FAA produced all records,

withholding none.  In response to Rutila's administrative appeal regarding Academy Air Traffic Information, the FAA explained that the name of the document that Rutila identified in the administrative appeal does not exist. (App'x 41–42.)

In his amended complaints, Rutila challenges the adequacy of the searches.  But he does not explain what other offices should have searched for records, what additional searches the FAA should have performed, what documents he believes are missing or any facts that suggest a document should have been located.  Instead, he simply demands "judicial review" of the FAA's searches.  This unadorned demand for "judicial review" is insufficient to challenge the agency's searches.[13]

Despite Rutila's failure to identify any deficiency in the agency's searches, Ms. Goodman explains the nature of the FAA's searches and that no other offices are reasonably expected to have responsive records.  The basic premise of the FOIA is that the statute does not require an agency to show that it has identified every document that is responsive to a request, but only that "it performed a search reasonably calculated to yield responsive documents."  *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir.2010).  To make this showing, a government agency submits a detailed and nonconclusory affidavit on a motion for summary judgment.  *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).  The

---

[13] Rutila's claims in this Court are limited to only those claims that he exhausted in the administrative process.  *See Hedley*, 594 F.2d at1044.  To the extent that Rutila seeks to allege additional facts in response to this summary judgment or seeks to amend his complaint—alleging facts that ostensibly demonstrate the FAA's searches were inadequate—his challenges to the adequacy of the search should be dismissed for failure to exhaust his remedies because any newly-alleged facts at this stage of the litigation were not first presented to the agency during the administrative appeal process or this litigation.

affidavits should provide a detailed description of the agency's search methods. *Negley v. Fed. Bureau of Investigation*, 589 F. App'x 726, 730 (5th Cir. 2014).

The agency's affidavits are entitled to a presumption of good faith, meaning that a court assumes that the agency is telling the truth. *In re Clinton*, 973 F.3d at 113; *Negley*, 589 F. App'x at 730. To overcome the presumption, the requester can show the agency acted in bad faith or that the affidavits do not describe an adequate search. *Negley*, 589 F. App'x at 730. However, "[a] plaintiff cannot call into question the adequacy of the search by engaging in '[m]ere speculation that as yet uncovered documents may exist,'" but must "point to some genuine dispute as to a material fact that made summary judgment inappropriate." *Id.*; *see also In re Clinton*, 973 F.3d at 113 (explaining that agency's affidavit cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents").

An agency may demonstrate that it conducted an adequate search by showing that it used "methods which can be reasonably expected to produce the information requested." *Batton*, 598 F.3d at 176. *Post hoc* evidence that the search missed responsive documents does not render it inadequate. *Negley*, 589 F. App'x at 731; *see also Batton*, 598 F.3d at 176 (explaining that even if the requester claims that documents are missing, the issue is only whether the search was adequate); *Ryan v. Fed. Bureau of Investigation*, 113 F. Supp. 3d 356, 362 (D.D.C. 2015) (the question is not whether there might exist any other documents possibly responsive to the request, but whether the search for those documents was adequate).

1.    **The agency conducted an adequate search for ADACEL Technologies emails (FOIA 9151).**

As explained above, Rutila requested emails between the FAA and ADACEL Technologies.  (Doc. 35-2 at 61.)  In its declaration, the FAA explains why this request was routed to the Academy and the Air Traffic Organization.  (App'x 27.)  The Academy generally uses ADACEL's equipment but does not communicate with ADACEL Technologies.  (App'x 27–28.)  Employees in the Academy, AMA 500, conducted searches of all folders of their Outlook email accounts for emails to or from ADACEL as Mr. Rutila requested, including the email address Mr. Rutila identified in this FOIA request, and any other emails sent to or received from ADACEL, from May 17, 2016 to May 31, 2016, but found no responsive documents.  (App'x 28.)  Another division in the Academy, AMA-900, also searched but found no responsive records.  (App'x 28–29.)  Thus, the Academy initially issued a no records response.  The second office, the ATO, conducted a search and found two responsive records, which were produced to Rutila.  (App'x 29–30.)

Rutila then submitted an administrative appeal, explaining that one document appeared to be missing from the ATO records, and that he believed "Brent Johnston" would have records.  (App'x 30.)  Armed with this additional information, both offices conducted additional searches.  (App'x 31–35.)  Mr. Johnston is an FAA contractor who is managed by the ATO, and the request was directed to Academy personnel, not ATO personnel.  (App'x 31–32.)  AMA-920 employees searched their Proofpoint email archives for any emails to or from ADACEL directly, including the specific helpdesk

email Mr. Rutila included in his FOIA request, to ensure they had not missed any emails in their initial Outlook search.  (App'x 32.)  They also searched for emails to or from themselves and Brent Johnston.  (App'x 32.)  They located two emails—one notifying Mr. Johnston about testing for an electric generator and the other notifying Mr. Johnston that an AMA-920 manager would be out of the office. (App'x 32.)

Mr. Rutila explained in his administrative appeal that he believed a page was missing from that office's January 5, 2017 initial response.  (App'x 33.)  The ATO located the missing page, which had been inadvertently excluded from the original production.  (App'x 33.)  The ATO's TSS Program Manager searched all folders of his Outlook email account for emails between himself and Brent Johnston within the prescribed date range and located a one-page email.  (App'x 34.)  He located an additional two-page Issue Ticket opened on May 26, 2016.  (App'x 34.)

These documents were produced to Rutila in response to his administrative appeal.  (App'x 35.)  The FAA has confirmed that no other organization within the FAA is likely to have records outside the Academy and ATO, and that it has searched all locations where responsive records reasonably might be expected.  (App'x 35–36.)

Rutila does not allege in his amended complaint where the agency should have searched but did not.  Even if he did, an agency is not required to search each of its record systems.  *Ryan*, 113 F. Supp. 3d at 362 (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  A search may be reasonable if it includes all systems that are likely to turn up the information requested.  *Id*.  The agency is not required to "conform its search to the dictates of a requester, but rather [must] conduct a search that

is reasonably expected to produce the information requested." *Id*. at 366 (citing *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 120 (D.D.C. 2010)). "As a matter of law, a requester's demand that certain record systems be searched does not obligate the agency to search those systems." *Morgan v. Fed. Bureau of Investigation*, No. A-15-CA-1255-SS, 2016 WL 7443397, at *3 (W.D. Tex. May 24, 2016) (citing *Ryan*, 113 F. Supp. 3d at 364).

What Rutila alleges instead is that he "disputes that the search performed by the FAA is adequate and seeks judicial review of Defendants' response." (Doc. 35-1 at 24, ¶ 223.) His reasons for the dispute include "those in his appeal along with others as a response to new revelations made by the response from Defendant." (Doc. 35-1 at 24, ¶ 224.) Rutila does not explain to the Court or Defendants what "new revelations were made" or how the FAA did not address the concerns that Rutila raised in his administrative appeal.

Regardless of Rutila's response to this motion, he has put no facts in front of this Court or the agency that suggest the agency should have searched in some other location or in some other way. As explained in *Negley*,

> A naked suggestion that additional files exist is not sufficient. The lead must include some information that tells the agency how to change its search to make it reasonable again. . . . Allowing an indication that more records exist, without requiring an indication of the types of records or their location, would change the agency's obligation from showing a reasonable search to proving a negative, namely, that there existed no more responsive documents.

*See Negley*, 589 F. App'x at 732. Rutila's administrative appeal of the Academy's initial response is instructive. (App'x 91.) Rutila argued in that appeal that the "FAA must

demonstrate that it conducted an adequate search." (App'x 91.)  But Rutila has no support

for his theory that a conclusory allegation of the type he offers is sufficient to allege that

a search is inadequate—and even if this theory were in any way plausible at the motion to

dismiss stage, it does not survive summary judgment.  The FAA is not required to prove a

negative—it is Rutila who must introduce evidence that creates a genuine dispute as to

the adequacy of the search to survive summary judgment.  *See id*. at 730; *SafeCard Serv.,*

*Inc*., 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist

does not undermine the finding that the agency conducted a reasonable search for them.")

Rutila has not raised an issue of fact (by alleging any facts at all) that create even a

suspicion that the agency's search was not adequate.  For this reason, Defendants seek

summary judgment in their favor on Rutila's challenge to the adequacy of the search for

ADACEL emails.

###        2.       The agency conducted an adequate search for Air Traffic Information (FOIA 803).

Rutila requested Academy Air Traffic Information (FOIA 803) regarding

responsibilities in three Air Traffic sections:  Enroute, Terminal Radar Operations, and

Tower.  (*Rutila II*, Doc. 24-2 at 2.)  Rutila clarified that he sought records that establish

the purpose, including the duties and responsibilities, of the Enroute, Terminal Radar

Operations, and Tower sections and units of the Air Traffic Training Branch, as well as

the purpose, including duties and responsibilities, of the employees who work within

those sections and units.  (*Rutila II*, Doc. 24-2 at 13.)  When Rutila confirmed that the Air

Traffic Technical Training work instruction identified by the FAA was responsive, the

FAA produced this 6-page document and 81 pages of position descriptions for a total of 87 pages of documents.  (*Rutila II*, Doc. 12-1 at 3–4, 16.).  Rutila submitted an administrative appeal, challenging the adequacy of the search and advising that the FAA should have produced the "Air Traffic Training Manual."  (*Rutila II*, Doc. 12-1 at 5.)  But the FAA explained that the FAA employee, who referred to an Air Traffic Training Manual," misspoke because the correct name of the document is the Air Traffic Technical Work Instruction, which had been produced.  (*Rutila II*, Doc. 12-1 at 15–16.)

The FAA provides a detailed description of the search for Enroute, Terminal Radar Operations, and Tower sections and units of the Air Traffic Training Branch, including the employee who has the expertise to understand the request.  (App'x 39.)  This employee is charged with overseeing the Academy's certification of organizational process and procedures, and these processes are routinely audited to ensure that the FAA's organizational processes comply with international standards.  (App'x 38.)  She determined that the Academy does not possess documents that fit the exact description of what Mr. Rutila requested, related to Enroute, Radar Operations, and Tower operations.  (App'x 39.)  However, the FAA had a document titled "Air Traffic Technical Training Work Instruction," which provides a functional statement for the Academy's Air Traffic Division in general.  (App'x 39.)  She determined that this document is the only document maintained by the Academy that is responsive to Mr. Rutila's request because it is the only document that provides the information Mr. Rutila described.  (App'x 40.)

Rutila's administrative appeal seeking an "Air Traffic Training Manual" appeared to be his misunderstanding of the FOIA coordinator's use of that term in their email

correspondence.  (App'x 41.)  However, there is no document with the name the "Air Traffic Training Manual."  (App'x 41.)  The FAA has searched all locations where it would reasonably expect to locate records responsive to FOIA 803.  (App'x 41.)

Similar to his challenge to the FAA's search for ADACEL emails, Rutila continues to challenge the adequacy of the FAA's search for Academy Air Traffic Information, arguing that the FAA did not address his concerns regarding the adequacy of the search.  (*Rutila II*, Doc. 24-1 at 7, ¶ 47.)  However, the only concern Rutila raised in his administrative appeal was his contention that the FAA failed to produce an "Air Traffic Training Manual."  (*Rutila II*, Doc. 12-1 at 5.)  The agency addressed this concern in its response, advising that a document by this name does not exist.  (App'x 41.)  Again, Rutila provides no facts and no "leads" that suggest additional documents exist.  *See Negley*, 589 F. App'x at 732.  His "naked suggestion" that the FAA's search is inadequate is insufficient to defeat summary judgment.  *See id*.

## IV.    Conclusion

Rutila failed to submit proper, perfected requests for Academy SOPs (FOIA 9149), Bostic information (FOIA 862) and Mitchell (FOIA 1174.)  Thus, he failed to exhaust his administrative remedies, which bars these claims.  As to the remaining two requests related to ADACEL Technologies emails (FOIA 9149) and Academy Air Traffic Information (FOIA 803), the FAA conducted adequate searches for documents in response to these requests and addressed all concerns raised by Rutila in his administrative appeals.  For these reasons, Defendants request that the Court grant summary judgment in favor of Defendants and tax all costs against Rutila.

Respectfully submitted,

CHAD E. MEACHAM
United States Attorney

s/ *Marti Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas State Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, TX  75242
Telephone:   214-659-8600
Facsimile:   214-659-8807
E-mail:  mary.cherry@usdoj.gov

*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served upon all parties or
their attorneys of record via the electronic case filing system for the U.S. District Court,
Northern District of Texas, on February 7, 2022.

s/ *Mary M. (Marti) Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney

*Attorney for Defendant*