IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| HAROLD EDWARD RUTILA, IV, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF TRANSPORTATION; FEDERAL AVIATION ADMINISTRATION, <br><br> Defendants. | Civil Action No. 3:16-CV-02911-B-BK <br> Civil Action No. 3:16-CV-3433 |

**DEFENDANTS' REPLY IN SUPPORT OF**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**



CHAD E. MEACHAM
United States Attorney

s/ *Marti Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas State Bar No. 24055299
1100 Commerce Street
Third Floor
Dallas, TX  75242
Telephone:  214-659-8600
Facsimile:   214-659-8807
E-mail:  mary.cherry@usdoj.gov

*Attorneys for Defendants*

## Table of Contents

I.  Rutila fails to raise a genuine issue of fact that he submitted proper, perfected requests for Academy SOPs (FOIA 9149), Bostic records (FOIA 862), or Mitchell Computer File Structure (FOIA 1174). ........................ 2

    A.  Rutila failed to agree to the fees required to conduct the search he requested for Academy SOPs (FOIA 9149). ................................................... 2

    B.  Rutila failed to submit proper requests for Bostic and Mitchell Information (FOIA 862 and 1174). .............................................................. 5

II. Rutila fails to raise a genuine issue of fact regarding the adequacy of the FAA's searches for Adacel emails (FOIA 9151) and Air Traffic Information (FOIA 803). ..................................................................................... 7

    A.  Rutila fails to raise a genuine issue of fact that the FAA conducted an inadequate search for Adacel emails. ........................................................ 7

    B.  Rutila fails to raise a genuine issue of fact that the FAA's search for Air Traffic Information is inadequate. ........................................................ 11

## Table of Authorities

**Cases**

*Batton v. Evers*,
    598 F.3d 169 (5th Cir.2010) ............................................................................... 8, 10

*Brown v. Perez*,
    835 F.3d 1223 (10th Cir. 2016) ................................................................................ 7

*Gezu v. Charter Commc'ns,*
    17 F.4th 547 (5th Cir. 2021) ..................................................................................... 9

*Hanson v. Tamez*,
    No. 4:13-CV-047-A, 2013 WL 1288163 (N.D. Tex. Mar. 26, 2013) ....................... 4

*Harris v. Freedom of Info. Unit Drug Enforcement Admin.*,
    No. 3:06-CV-0176-R, 2006 WL 3342598 (N.D. Tex. Nov. 17, 2006) .................... 4

*Jenkins v. U.S. Dep't of Justice*,
    263 F. Supp. 3d 231 (D.D.C. 2017) ......................................................................... 6

*Kemmerly v. U.S. Dep't of Interior*,
    430 F. App'x 303 (5th Cir. 2011) ........................................................................ 3, 5

*Lynch v. Union Pac. R.R. Co.*,
    No. Civ. No. 3:13-CV-2701-L, 2015 WL 6807716 (N.D. Tex. Nov. 6, 2015) ....... 9

*Whitaker v. Dep't of Commerce*,
    970 F.3d 200 (2nd Cir. 2020) ................................................................................... 6

**Statutes, Rules, and Other Authorities**

5 U.S.C. § 552(a)(3)(A) .................................................................................................... 4

Summary judgment should be granted in favor of Defendants regarding Plaintiff Harold Rutila's claims under the Freedom of Information Act (FOIA). As set forth in Defendants' brief in support of summary judgment (Doc. 113), three FOIA requests (the "improper or unperfected requests") should be dismissed for failure to state a claim. Rutila failed to pay the fee for one FOIA request. (FOIA 9149.) For two requests, he failed to submit properly-framed and perfected requests that reasonably described the records sought or would require the agency to create records. (FOIA 862 & 1174.) The FAA properly suspended and/or closed these three requests.

Yet another reason to dismiss these three improper or unperfected FOIA requests is that the FAA explained in its summary judgment motion why these three requests are improper and/or not perfected. Because Rutila's response does not raise a genuine issue that he submitted proper or perfected requests, Defendants are entitled to summary judgment for these three FOIA requests.

With regard to the remaining two FOIA requests, seeking Adacel emails (FOIA 9151) and Air Traffic Information (FOIA 803), the FAA produced all documents and withheld none. Rutila challenges the adequacy of the search. With regard to the Adacel emails, Defendants' summary judgment motion provided copious facts regarding its searches, including how the FAA determined where to search, the multiple individuals from multiple offices who were involved in the searches, and the process used for those searches. The FAA's declaration shows that its searches for Adacel emails are indeed adequate.

As for the "Air Traffic Training Manual" that Rutila contends the FAA has not

**Defendants' Reply in Support of Motion for Summary Judgment – Page 1**

produced (FOIA 803), the FAA explained in the administrative process that an employee mis-named another document, and no document titled "Air Traffic Training Manual" exists.  In support of summary judgment, the FAA reiterated that conclusion and further explained that the document produced, which has a different name, is the only document responsive to Rutila's request.  Rutila's response asserts the FAA has not confirmed *in the declaration* that the document he identified does not exist—but only because the FAA did not specifically state "*the document does not exist*."  But no such "magic words" were required, and Rutila's argument is insufficient to raise a genuine issue of material fact that an alleged "Air Traffic Training Manual" exists and that the FAA withheld this document.

Defendants have provided competent summary judgment evidence that Rutila's challenges to the FAA's responses to his FOIA requests have no merit.  Rutila's response grasps for a fact issue—but wholly fails to raise any issue of *material* fact that infers or suggests that Rutila submitted proper, perfected requests, that the FAA's searches were inadequate, or that any documents exist or may exist that have not been produced.  As reiterated below, Defendants are entitled to summary judgment in their favor on all claims asserted against them.

**I.    Rutila fails to raise a genuine issue of fact that he submitted proper, perfected requests for Academy SOPs (FOIA 9149), Bostic records (FOIA 862), or Mitchell Computer File Structure (FOIA 1174).**

**A.    Rutila failed to agree to the fees required to conduct the search he requested for Academy SOPs (FOIA 9149).**

With regard to the Academy Standard Operating Procedures (SOP), Rutila failed

to agree to the fee for this search, and thus, the FAA was not required to search for these documents.  *See Kemmerly v. U.S. Dep't of Interior*, 430 F. App'x 303, 304 (5th Cir. 2011) (explaining that payment of fees is necessary to exhaust administrative remedies). Rutila's theory that the FAA could not assess fees because its request fell outside the FAA's response period is inaccurate.  (Br. at 21–22.)[1]  The FAA explained, in great detail, what constitutes a perfected request (Doc. 115-2, App'x 8–10) and how it calculates its deadlines, including any tolling provisions.  (Doc. 115-2, App'x 10-12). Both Dedra Goodman (Doc. 115-2) and Eddie Drake (Doc. 115-4) explained how the FAA processed Rutila's request for Academy SOPs, including its effort to determine the scope of Rutila's request, and the FAA's twenty-day period to respond to the request, once it was perfected.  (Doc 115-2, App'x 13–16); (Doc 115-4, App'x 112–122.)

In response, Rutila disputes how the FAA interprets FOIA and the FAA's regulations, proffering his own interpretation of the FAA's regulations and FOIA, including where the request must be sent, the definition of "component," when the clock begins or ends, and whether and when tolling provisions apply.[2]  (Resp. at 20-31.)  He disagrees with the manner in which the FAA calculated the date his FOIA request was

---

[1] Defendants refer to Defendants' Brief in Support of Motion for Summary Judgment (Doc. 113) as "Br. at ___" and Plaintiff's Brief in Support of Response to Defendants' Motion for Summary Judgment (Doc. 121) as "Resp. at ___."

[2] With regard to the three improper and unperfected requests, Rutila argues that the FAA's interpretation of its regulations and FOIA is erroneous (fees for Academy SOPs (Resp. at 21)) and "arbitrary and capricious" (requests for Bostic and Michell information (FOIA 862 and 1174)).  (Resp. at 44–48.) However, Rutila conflates the distinction between challenging the FAA's *application* of its regulations to Rutila's FOIA requests and challenging the FAA's *interpretation* of its regulations and FOIA.  Rutila has not pled a claim against the FAA under the Administrative Procedure Act (APA) to challenge the FAA's interpretation of FOIA, and thus, the FAA's interpretation of FOIA and whether its interpretation is arbitrary and capricious are not at issue in this litigation.

received, the date it was perfected, and the date the FAA's 20-day response period expired, arguing the FAA's calculation is erroneous based on Rutila's interpretation of FOIA and the FAA's implementing regulations.[3]  (Resp. at 20–31).

As courts in this district have explained, "[r]equests pursuant to the FOIA must be submitted to the proper federal agency following *that agency's established rules*." *Hanson v. Tamez*, No. 4:13-CV-047-A, 2013 WL 1288163, at *3 (N.D. Tex. Mar. 26, 2013) (citing 5 U.S.C. § 552(a)(3)(A)) (emphasis added); *see also Harris v. Freedom of Info. Unit Drug Enforcement Admin.*, No. 3:06-CV-0176-R, 2006 WL 3342598, at *4 (N.D. Tex. Nov. 17, 2006) (explaining that "requests must be made in accordance with the agency's regulations").

Rutila contends that the 20-day period to respond to his request for Academy SOPs ended on October 5, 2016.  (Resp. at 29.)  However, the FAA explained that the FAA's response date was October 17, 2016.  (Br. at 4, 22–23.)  Mr. Drake explained that the FAA presented Rutila with a fee estimate of $2,570 before the 20-day period expired.[4]  (Doc. 115-4, App'x 120–21); (Doc. 115-3, App'x 49.)  Ms. Goodman also

---

[3] The FAA does not dispute that a litigant may argue that an agency improperly *applied* its FOIA regulations to a particular litigant, that is, that the agency applied its regulations to Rutila's requests in a manner that is not consistent with the agency's application of its regulations to all FOIA requesters.  But that is not the circumstances in this case.  Rutila does not allege that the FAA improperly *applied* its regulations to Rutila—he alleges the FAA's *interpretation* of its regulations is erroneous (an allegation that would implicate the APA if pled, but which Rutila has not pled in this lawsuit).  Here, the FAA reiterated in its declarations how it calculates response dates for all requesters and how that calculation applies to Rutila.  Although Rutila dislikes the manner in which the FAA calculates the dates, he has no competent summary judgment evidence that the FAA improperly applied its regulations to Rutila, that is, that the FAA did not apply its regulations to Rutila in the same manner, using the same methods and the same calculations, that it applies to every FOIA requester.

[4] Rutila faults the FAA for its alleged failure to discuss the scope of Rutila's request for SOPs.  (Resp. at 27–28.)  However, a chronology of the email correspondence shows that the FAA began contacting Rutila about the scope immediately after receiving his request. (Doc. 115-5, App'x 140.)  More importantly, it is

**Defendants' Reply in Support of Motion for Summary Judgment – Page 4**

explained, with even more detail, that the FAA's response date had not expired at the time that the FAA requested its fees. (Doc. 115-2, App'x 13–16.)

The agency, following regulations that apply to *all* FOIA requesters, explained why its response date had not expired at the time the FAA requested fees to perform the search that Rutila requested. Rutila does not assert that the FAA applied one method of calculating perfected requests and the expiration of its deadlines to Rutila but does not apply those same methods to other FOIA requests. That Rutila disagrees with the FAA's methodology to calculate a response date is of no moment here. The FAA has fully explained why its fee request was timely made, and Rutila does not dispute that he refused to agree to that fee. Thus, Defendants are entitled to summary judgment on this issue. *See Kemmerly*, 430 F. App'x at 304.

### B. Rutila failed to submit proper requests for Bostic and Mitchell Information (FOIA 862 and 1174).

Rutila challenges the FAA's determination that the Bostic (FOIA 862) and Mitchell (FOIA 1174) requests are not proper requests.[5] (*Rutila II*, Doc. 24-1 at 9, 12,

---

Rutila who abandoned that discussion. The FAA advised Rutila of the fee on October 7, 2016 at 5:04 p.m. (Doc. 115-5, App'x 131) and Rutila responded a few hours later, on October 8, 2016 at 2:19 a.m., stating his "contention that the FAA is unable to assess fees for this request as it is already overdue." (Doc. 115-5, App'x 130.) The moment Rutila learned the cost he needed to pay to perform the search that he requested, Rutila did not discuss the scope of his request to reduce that cost but turned exclusively to his assertion the FAA could not charge a fee.

[5] The first three items in the request for Bostic records seek "all BMC Remedy records for Madeline Bostic"; "all VMAT requests submitted for Madeline Bostic"; and "all emails . . . regarding Madeline Bostic." (*Rutila II*, Doc. 24-1 at 30.) Items four and five seek a "[c]opy of the Active Directory Account Profile (all tabs) for Madeline Bostic"; and a "[c]opy of the NEXGEN Toolbox profile for Madeline Bostic." (*Id*.) The request for Mitchell records seeks a "copy of the directory or folder structure of Windows Explorer for all of Rick Mitchell's network drives and 'My Documents' folders," or "[a] screenshot or 'screencap.'" (*Id*. at 37.)

¶ 73, ¶¶ 97–98).  In response to Defendants' motion, Rutila argues the FAA's closure of these requests was improper as well as "extreme, arbitrary and capricious" because, in his view, the requests reasonably described the records sought.[6]  (Resp. at 44 –57.)  As for Bostic's records (FOIA 862), Rutila generally asserts that because the FAA made another effort to interpret his request for "BMC Remedy records" and searched during this litigation, then his request reasonably described the request for BMC Remedy records.

The FAA disagrees, explaining that the categories identified in Rutila's request for records were not actually proper because the categories were overbroad, did not identify a date range, sought records that "concern Bostic", and appeared to require not only a search but also searches in response to a search.  (Doc. 115-2, App'x 21–22.)  Even though the FAA conducted a search of the BMC remedy system for helpdesk tickets, no responsive data was returned.[7]  (Doc. 115-2, App'x 23–24.)  In addition, there are no records from the VMAT system because it was not operational at the time Bostic was employed.  (Doc. 115-2, App'x 24–25.)  Thus, not only were Rutila's requests for Bostic information improper and unperfected requests, searching the BMC Remedy and VMAT systems for information would be futile.  *See Whitaker v. Dep't of Commerce*, 970 F.3d 200, 207 (2nd Cir. 2020) (explaining that under FOIA, an agency need not conduct a search that it has reasonably determined would be futile); *Jenkins v. U.S. Dep't of Justice*, 263 F. Supp. 3d 231, 235 (D.D.C. 2017) (explaining that where an agency demonstrates it

---

[6] Rutila's assertion that the FAA's interpretation of FOIA is "arbitrary and capricious" improperly conflates the claims asserted in this case.  *See supra* n. 2–3.

[7] The FAA further explained that there are no "records" in the BMC Remedy system but rather "data" that tracks helpdesk tickets.  (Doc. 115-2, App'x 21–22.)

is unlikely to possess responsive records, it is not required to conduct a search).

Rutila also argues that his request for Bostic and Mitchell computer file printouts is a proper request. (Resp. at 54–58.) He contends that the FAA is required to create records because FOIA allows the FAA to charge a duplication fee. (Resp. at 54.) Rutila however, cites no authority for the proposition that the FAA is required to create a screenshot, which is incorrect. *See Brown v. Perez*, 835 F.3d 1223, 1237 (10th Cir. 2016) (explaining that FOIA did not require the agency to open software, input data, and create a screen image to capture and produce). Defendants are entitled to summary judgment with regard to Rutila's requests for Bostic and Mitchell information (FOIA 862 and 1174) because Rutila submitted improper FOIA requests that were administratively closed or suspended.

## II.   Rutila fails to raise a genuine issue of fact regarding the adequacy of the FAA's searches for Adacel emails (FOIA 9151) and Air Traffic Information (FOIA 803).

### A.   Rutila fails to raise a genuine issue of fact that the FAA conducted an inadequate search for Adacel emails.

The request for Adacel emails is one of the two FOIA requests for which the FAA conducted searches, produced documents, Rutila administratively appealed, and the FAA produced more documents (if any) in response to those administrative appeals. (Doc. 115-2, App'x 7, 26–35.) The FAA produced some documents in an initial response. In an administrative appeal while litigation was pending, Rutila suggested that the FAA should have responsive documents from Brett [sic] Johnston. (Doc. 115-3, App'x 89.) In response to the administrative appeal, the FAA returned to numerous custodians and

Brent Johnston, who conducted additional searches, and produced all documents found. (Br. at 31); (Doc 115-2, App'x 7, 33–36.) The FAA also confirmed that the Academy and ATO searched for documents "to or from Adacel directly" and "to or from themselves and Brent Johnston." (App'x 32, 34.) Mr. Johnston also searched for emails to or from Adacel. (App'x 33.)

That Rutila has not and cannot raise a genuine issue of fact regarding the adequacy of the FAA's searches for Adacel emails is evident from his arguments. He first argues that the FAA's declaration did not use the phrase "all files likely to contain responsive records were searched." (Resp. at 31.) Rutila contends that the FAA's declaration that it "searched where responsive records might reasonably be expected" is insufficient. (Resp. at 31–32.) His semantics argument has no merit under the law of this Circuit. *See Batton v. Evers*, 598 F.3d 169, 176 (5th Cir.2010) (explaining that the basic premise of the FOIA is that the statute does not require an agency to show that it has identified every document that is responsive to a request, but only that "it performed a search reasonably calculated to yield responsive documents").

Another argument by Rutila rests on the faulty premise that the FAA's alleged failure to confirm facts that do not exist means that the search was not adequate. Rutila's response argues that the FAA does not state, with specificity, that Brent Johnston, an Adacel contractor, is the *only* Adacel contractor at the FAA. (Resp. at 33–35, 40.) Rutila complains that "Goodman does not address how many similar contractors like Johnston work in that capacity." (Resp. at 35.) He contends that the FAA must attest "how many Adacel representatives like Johnston worked at the FAA Academy." (Resp. at 40.)

**Defendants' Reply in Support of Motion for Summary Judgment – Page 8**

However, Mr. Johnston himself, the Adacel contractor, confirmed that he was not aware of any other offices within the Air Traffic Organization that would have communicated directly with Adacel. (Doc. 115-2, App'x 34–35.) That statement, by the Adacel contractor, should suffice to show that the FAA has adequately determined that there are no other contractors, like Mr. Johnston, who would reasonably be expected to have responsive documents. Certainly Rutila has not raised any *facts* that suggest or infer that other contractors exist or that if such contractors do exist, that they would have responsive emails.

In further response to Rutila's contention that there is an absence of facts regarding this issue, however, Ms. Goodman confirms, with the attached supplemental declaration, that "Brent Johnston was the only Adacel contractor assigned to the Academy", and . . . "there is no other Adacel point of contact within the FAA . . . who is likely to have communicated with the Academy or with any other FAA personnel regarding the Adacel simulators used in the Academy's training courses." (App'x 144.)[8] *See Gezu v. Charter Commc'ns,* 17 F.4th 547, 555 n.9 (5th Cir. 2021) (finding district court did not err in considering rebuttal declaration submitted with reply brief); *Lynch v. Union Pac. R.R. Co.*, No. Civ. No. 3:13-CV-2701-L, 2015 WL 6807716, at *1 (N.D. Tex. Nov. 6, 2015) (considering reply evidence "[b]ecause Defendant's reply and related evidence are responsive to arguments raised and evidence relied on by Plaintiff in his summary judgment response").

---

[8] Defendants attach Ms. Goodman's supplemental declaration as an exhibit, paginated as App'x 142–45, sequentially following Defendants' appendix for its summary judgment motion. (*See* Doc. 115–1.)

**Defendants' Reply in Support of Motion for Summary Judgment – Page 9**

Rutila asserts no facts that suggest the FAA had some nefarious agenda to deny searching for and locating documents responsive to Rutila's request or that its searches were in any way inadequate. Rutila's statement that the FAA "improperly excluded emails from Adacel representatives who worked at the FAA" (Resp. at 33) is conclusory, with no facts to support it. The FAA has fully explained its multiple searches and the process undertaken to *exhaustively* conduct those searches: its initial search[9] (Doc. 115-2, App'x 27–31) and additional searches in response to Rutila's administrative appeal.[10] (Doc. 115-2, App'x 31–35) (Doc. 115-3, App'x 89.) Based on the FAA's extensive investigation and multiple searches, the FAA has adequately searched for responsive documents, including "all locations where its personnel would reasonably expect to locate records responsive to FOIA 9151." (App'x 35.) As FOIA requires, the FAA conducted "search[es] reasonably calculated to yield responsive documents." *See Batton*, 598 F.3d at 176.

---

[9] The FAA tasked the Academy, including all of the AMA-500 managers to search their emails. (Doc. 115-2, App'x 27–28.) These managers also explained that the contract with Adacel is owned by the Air Traffic Organization (ATO) and that another division (AMA-900) oversees the Adacel equipment. (Doc. 115-2, App'x 27–28.) The AMA-900 manager explained that no one in his branch would have sent or received emails to or from Adacel, but that within the Academy, his branch was the most logical location to search. (Doc. 115-2, App'x 28–29.) The AMA-900 manager and his employees searched and found no responsive documents. (Doc. 115-2, App'x 29.) The FAA also tasked ATO to search for responsive records, which found documents and produced them to Rutila. (Doc. 115-2, App'x 29 –30.)

[10] Additional searches were conducted by both the FAA Academy and the Air Traffic Organization, including Brent Johnston, which the FOIA coordinator learned was a contractor working at the FAA. (App'x 31.) One division of the Academy, AMA-920, located two emails, one notifying Mr. Johnston about testing for an electric generator and one stating that Mr. Johnston would be out of the office. (App'x 32.) Based on Rutila's appeal, ATO asked Brent Johnston to search his emails. (App'x 33.) Mr. Johnston located a one-page email. (App'x 33.) Mr. Johnson also confirmed that he was "not aware of any other offices within the Air Traffic Organization that would have communicated directly with Adacel." (App'x 34–35.)

> B. **Rutila fails to raise a genuine issue of fact that the FAA's search for Air Traffic Information is inadequate.**

Finally, Rutila's meritless challenges to the adequacy of the FAA's searches is further evidenced by an additional semantic argument. Rutila contends that the FAA has not shown that one document that Rutila contends is missing does not exist. Just as Rutila complains that the FAA did not use the phrase "all files likely to contain responsive records were searched," Rutila relies on semantics to argue that "the existence of the Air Traffic Training Manual" has not been properly denied in the FAA's *declaration*. (Resp. at 41.)

In response to Rutila's administrative appeal that sought an "Air Traffic Training Manual," the FAA explained that an employee improperly referred to the Air Traffic Technical Training Work Instruction as the "Air Traffic Training Manual." (App'x 110.) The FAA stated that "no agency record titled 'Air Traffic Training Manual' exists." (App'x 110.)

In the summary judgment motion, Ms. Goodman explained more thoroughly the manner in which the FAA searched for documents in response to Rutila's request for Air Traffic Information, which included numerous subcomponents. Ms. Goodman, after consulting with the FAA's employee with the most knowledge to respond to the request, explained that "the 'Air Traffic Technical Training Work Instruction' is the only document that provides the type of description Mr. Rutila's request described." (App'x 39–40.) Rutila quibbles that the FAA's *declaration* did not specifically re-state what the administrative appeal had already stated: "no agency record titled 'Air Traffic Training

Manual' exists." But the FAA has clearly explained, in both the administrative process and in this summary judgment, that the FAA has no knowledge of any such document with this title. (App'x 41.)

In the attached supplemental declaration, Ms. Goodman explains that "Academy staff at time informally referred to the Work Instruction document by this other name." (App'x 143.) Ms. Goodman now confirms in a *declaration*: "[t]he FAA is not aware of any document with the title 'Air Traffic Training Manual.'" (App'x 143.) Where, as here, the FAA has searched for and produced responsive documents and has explained to Rutila why he incorrectly contends a document with a particular name exists, the FAA has satisfied its obligation to conduct "search[es] reasonably calculated to yield responsive documents." *See Batton*, 598 F.3d at 176.

Rutila's ongoing efforts to challenge copious efforts made by the FAA to respond to Rutila's FOIA five remaining requests (originally ten), which are based on suppositions and conclusory allegations, are not sufficient to withstand Defendant's motion for summary judgment. Defendants request that the Court grant summary judgment in its favor and tax all costs against Rutila.

**Defendants' Reply in Support of Motion for Summary Judgment – Page 12**

        Respectfully submitted,

        CHAD E. MEACHAM
        United States Attorney

        s/ *Marti Cherry*
        Mary M. (Marti) Cherry
        Assistant United States Attorney
        Texas State Bar No. 24055299
        1100 Commerce Street
        Third Floor
        Dallas, TX  75242
        Telephone:   214-659-8600
        Facsimile:   214-659-8807
        E-mail:  mary.cherry@usdoj.gov

        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served upon all parties or their attorneys of record via the electronic case filing system for the U.S. District Court, Northern District of Texas, on April 6, 2022.

        s/ *Mary M. (Marti) Cherry*
        Mary M. (Marti) Cherry
        Assistant United States Attorney

        *Attorney for Defendant*