UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAROLD EDWARD RUTILA, IV, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-2911-B |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| TRANSPORTATION and FEDERAL | § | |
| AVIATION ADMINISTRATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Department of Transportation ("DOT") and Federal Aviation Administration ("FAA") (collectively, "Defendants")'s Motion for Summary Judgment (Doc. 112). For the reasons stated below, the Court **GRANTS** Defendants' motion.

## I.

## BACKGROUND

A.   *Factual Background*

This case concerns five unfulfilled FOIA requests—FOIA 9149 submitted September 7, 2016; FOIA 9151 submitted September 8, 2016; FOIA 862 submitted October 26, 2016; FOIA 1174 submitted October 27, 2016; and FOIA 803 submitted October 27, 2016—submitted by Plaintiff Harold Edward Rutila IV ("Rutila") to DOT between September 7, 2016, and October 27, 2016. Rutila submitted these requests after he failed to pass air traffic controller training for the FAA. *Rutila v. Dep't of Transp.*, 12 F.4th 509, 510 (5th Cir. 2021). The Court outlines the specifics of each records request below.

1.    FOIA 9149

Rutila submitted FOIA 9149 on September 7, 2016, requesting "FAA Academy Quality Assurance (AMA-505b) SOPs concerning evaluation procedures/methods/guidance/etc., including emails concerning said guidance or modifications and interpretations to or regarding the guidance." Doc. 35-1, 3d Am. Compl., ¶ 98; Doc. 35-2, App., Ex. 10. On September 11, 2016, an FAA employee requested clarification for the "time frame" of Rutila's FOIA request, Doc. 35-2, App., Ex. 11, and Rutila responded on the same day with the requested information. *Id.* Ex. 12. On September 14, 2016, the FAA acknowledged receipt of the information and assigned a tracking number to the request. *Id.* Ex. 13. Then on September 16, 2016, the FAA followed up with a further request for clarification on what documents Rutila sought and the maximum amount of money he was willing to pay for the search, noting that "[t]his search may be somewhat extensive." *Id.* Ex. 15. Rutila responded on the same day stating that he was "willing to pay . . . $25." *Id.* Ex. 16. The FAA, on October 6, 2016, followed up by again requesting clarification for what documents Rutila sought and the amount of money he was willing to pay for the search. *Id.* Ex. 17. Rutila then forwarded his prior response to the same questions to the FAA. *Id.* Ex. 19. The FAA replied the next day and notified Rutila that his request would cost "at least $1500.00 due to search time" and provided a final fee estimate later that day in the amount of $2570.00. *Id.* Exs. 20–22. Rutila responded later that day contesting the assessment of fees because "the FAA is unable to assess fees for this request, as it is already overdue." *Id.* Ex. 23. Rutila did not pay the fees. *Id.* Exs. 23, 28.

2.    FOIA 9151

On September 8, 2016, Rutila submitted a request for:

Copies of emails from Adacel Technologies Limited ("Adacel"), including the email address helpdesk@simcare.biz, that were sent to or received by personnel at the FAA Academy whom are responsible for overseeing Adacel equipment (ie. [sic] Tower Simulation System [TSS] labs) used in the FAA Academy Tower Cab Initial Qualification Training Course, within a timeframe from and including May 17th, 2016 to and including May 31st, 2016.

Doc. 114-2, App., 84. Less than a week later, the FAA acknowledged receipt and provided contact information should Rutila have any questions. *Id.* at 85. On October 12, 2016, the FAA Academy informed Rutila that it "[was] not able to locate any records pertaining to [his] specific request, and [it was] unaware of any other offices likely to possess additional responsive records." *Id.* at 87. However, on January 4, 2017, the FAA's Air Traffic Organization's Office of Safety and Technical Training ("ATO") provided "[t]wo records consisting of three pages" as fulfillment of FOIA 9151. *Id.* at 86.

Rutila appealed both of these determinations on January 31, 2017. *Id.* at 89–92. He appealed the Academy's response because (1) the letter did not detail how the FAA performed the search for records, (2) documents from FOIA 9143 evidenced issues with equipment, likely necessitating emails regarding the issue, and (3) he surmised that other offices "may have responsive records." *Id.* at 91. He appealed the ATO's response based on the adequacy of the FAA's search for records because (1) a provided record consisted of two pages, but the FAA only provided the first page and (2) Rutila averred that "[e]mails from Adacel are likely contained on the email account of Bre[n]t Johnston," which the FAA did not appear to have searched. *Id.* at 89. The FAA agreed that the Academy and ATO searches "were not adequate." *Id.* at 93. The FAA released the second page of the previously

released document, "[a]n additional two-page Issue Ticket with an open date of May 26, 2016," and

five pages of emails from a search for "Brent Johnston" emails. *Id.* at 94.

    <u>3.</u>    <u>FOIA 862</u>

On October 26, 2016, Rutila submitted a FOIA request for various records, emails, and

account information for Madeline Bostic. App., Ex. 12, *Rutila v. United States Dep't of Transp.*,

No. 3:16-CV-3433-BK (N.D. Tex. Sept. 25, 2017), Doc. 24-2.[1] Specifically, he requested:

> 1. All BMC Remedy records for Madeline Bostic. BMC Remedy was accessible for
> employees as of several months ago, internally, from nsc.faa.gov. BMC Remedy is the
> system used to keep track of support tickets for the FAA. This search should be
> performed on all persons who come up for this name. The records requested include
> the Notes, Summary, Work Info, and Resolution tabs. A printout or report (which
> simply provides the information from the underlying record database) should comply
> with this request. Include all attachments found in the Work Info section. Provide
> a copy of all related tickets, as well as the Relationships section.
>
> 2. All VMAT requests submitted for Madeline Bostic. This includes those requests
> for which the user name was entered manually (i.e. account creation). Provide a copy
> of the VMAT request and any related information, like the above request.
>
> 3. All emails, including attachments, sent to NSC@faa.gov or other Service Center,
> IT Center, etc. mailboxes, regarding Madeline Bostic. This includes those emails for
> which Madeline Bostic is mentioned in the contents of the email. This request
> includes Outlook, Proofpoint, and Lotus Notes. The scope of the timeline for this
> request is from 2011 to the present.
>
> 4. Copy of the Active Directory Account profile (all tabs) for Madeline Bostic,
> available from the Active Directory Users and Computers tool.
>
> 5. Copy of the NEXTGEN Toolbox profile for Madeline Bostic, available from the
> NEXTGEN Toolbox, a tool used by officials in the VMAT department.

*Id.* On November 1, 2016, the FAA FOIA Office emailed Rutila stating that "[his] request has been

processed" and attached a letter providing contact information should he "wish to inquire as to the

---

[1] This consolidated case consists of two separately filed FOIA cases. The Court uses the full court
filings citation when referring to filings in the associated case.

status of [his] request." *Id.* Ex. 13. After receiving no further information about FOIA 862, Rutila emailed the FAA FOIA office on December 14, 2016, requesting an update. *Id.* Ex. 14. On December 15, 2016, the FAA responded stating that "we are seeking guidance within the FAA" about how to address Rutila's request. *Id.* Ex. 18. The next day, Rutila filed a lawsuit seeking the disclosure of the information in FOIA 862. Doc. 114-1, Goodman Decl., 25.

On February 7, 2017, Rutila filed an appeal with the FAA for a lack of response to FOIA 862. Doc. 114-2, App., 68–70. On February 27, 2017,[2] the FAA administratively closed FOIA 862 because the first three requests were "overly broad and without enough specificity to be considered a proper FOIA request" and the last two requests "d[id] not exist in the form of records." *Id.* at 71–72.

4.   FOIA 1174

Rutila submitted FOIA 1174 on October 27, 2016. App., Ex. 15, *Rutila v. United States Dep't of Transp.*, No. 3:16-CV-3433-BK (N.D. Tex. Sept. 25, 2017), Doc. 24-2. In the request, he asked the FAA to provide him "[a] copy of the directory or folder structure of Windows Explorer for all of Rick Mitchell's network drives and 'My Documents' folders." *Id.* "A screenshot or 'screencap' would be considered an acceptable means of fulfilling this request," Rutila added. *Id.* On November 14, 2016, the FAA FOIA Office replied to Rutila's FOIA request and provided an acknowledgment letter along with contact information should he have any questions. *Id.* Ex. 16. After not receiving any updates, Rutila inquired on December 14, 2016, about the status of FOIA 1174. *Id.* Ex. 17. The

---

[2] The FAA's letter lists the date as February 27, 2016. Doc. 114-2, App., 71–72. Because Rutila submitted his claim on October 26, 2016, the Court assumes the date erroneously identifies the year as 2016 instead of 2017.

next day, the FAA responded and noted that "there is a question about the proper way to address [his] request." *Id.* Ex. 18. Rutila then filed a lawsuit seeking the disclosure of the information in FOIA 1174 on December 16, 2016. Doc. 114-1, App., 25. On February 6, 2017, Rutila also appealed the "failure to respond to" FOIA 1174. Doc. 114-2, App., 79–80. After discussing FOIA 1174 with Rutila, the FAA administratively closed it as an improper request on February 27, 2017. Doc. 114-1, Goodman Decl., 18; Doc. 114-2, App., 81–82.

    5.     <u>FOIA 803</u>

On October 27, 2016, Rutila submitted another FOIA request for:

> Documents containing a description and the responsibilities of the following sections and units of the Air Traffic Training Branch of the FAA Academy, as well as position descriptions of employee positions within them:
>
> 1. Air Traffic En-Route Section
>
> a. Air Traffic Advanced En-Route Operations Unit
> b. Air Traffic En-Route Development Unit
> c. Air Traffic En-Route Operations Unit
>
> 2. Air Traffic Terminal Radar Operations Section
>
> a. Air Traffic Specialized Training Unit
> b. Air Traffic Terminal Operations Unit
> c. Air Traffic Terminal Radar Development Unit
>
> 3. Air Traffic Tower Section
>
> a. Air Traffic Tower Operations Unit
> b. Air Traffic Tower Development Unit
> c. Air Traffic Advanced Tower Operations Unit

Doc. 114-2, App., 97. Later that same date, the FAA acknowledged receipt of the FOIA request. *Id.* at 98. On November 15, 2016, the FAA sought clarification of the scope of documents sought and Rutila clarified less than a week later that he sought "a record or records that establish the

purpose, including the duties and responsibilities, of the aforementioned sections and units of the Air Traffic Training Branch, as well as the purpose, including duties and responsibilities, of the employees who work within those sections and units." *Id.* at 103. Two weeks later, the FAA again sought clarification of Rutila's FOIA request by providing a responsive position description. *Id.* at 100–01. Rutila responded the next day requesting "the position description documents, and any other documents that they have given Human Resources to justify or describe the positions." *Id.* at 99–100. On December 8, 2016, an employee with the FAA responded to Rutila's last email stating "the responding organization . . . [is] in the process of reviewing the below mentioned Air Traffic Training Manual and the Position Description documents for release." *Id.* at 99. The FAA provided eighty-seven pages of responsive records on December 14, 2016, but these records did not include the Air Traffic Training Manual. *Id.* at 106.

Rutila appealed FOIA 803, arguing the Air Traffic Training Manual should have been included in the responsive records. *Id.* at 108. The FAA denied the appeal because "the record that [Rutila] refer[red] to does not exist" and the title Air Traffic Training Manual was errantly used instead of Air Traffic Technical Work Instruction, which the FAA had provided to Rutila. *Id.* at 109–10.

B.    *Procedural Background*

The Court dismissed these five FOIA requests for a lack of subject matter jurisdiction on May 13, 2019. *Rutila v. U.S. Dep't of Transp.*, 2019 WL 2106182, at *1 (N.D. Tex. May 13, 2019), *adopting R. & R.* 2019 WL 2107302 (N.D. Tex. Apr. 24, 2019). The Fifth Circuit reversed on September 2, 2021, and remanded the case back to this Court for further adjudication. *Rutila*, 12 F.4th at 511. Upon remand, the Court entered a scheduling order for Defendants to move for

summary judgment with a subsequent response and cross-motion by Rutila. Doc. 103, Scheduling Order, 2. Defendants filed their motion for summary judgment (Doc. 112) and Rutila did not file a cross-motion but timely responded to Defendants' motion. Doc. 120, Pl.'s Resp. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

"As is the case here, most FOIA cases are resolved at the summary judgment stage." *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 610 (5th Cir. 2003). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law . . . identif[ies] which facts are material," and only a "dispute[] over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts and the inferences drawn from the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Once the summary-judgment movant has met its burden, "the non[-]movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citation omitted). A non-movant may not simply rely on the Court to "sift through the record" to find a fact issue, but must point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material

- 8 -

facts." *Matsushita,* 475 U.S. at 586. The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little,* 37 F.3d at 1075.

## III.

## ANALYSIS

Below, the Court analyzes each of the five FOIA requests to determine whether the FAA timely responded and then whether the FAA fulfilled the requests.

A.     *Whether Rutila Exhausted Administrative Remedies (FOIA 9149)*

When an agency receives a FOIA request, the agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request." 5 U.S.C. § 552(a)(6)(A)(i). In "unusual circumstances" such a determination "may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). "Unusual circumstances" include when: an agency "need[s] to search for and collect the requested records from field facilities or other establishments," a single request includes voluminous records, or the agency must consult "with another agency having a substantial interest in the determination of the request." *Id.* § 552(a)(6)(B)(iii). Agencies are required to publish regulations providing further guidance to the public on how to make a FOIA request. *Id.* § 552(a)(1)(A). Further, agencies must fulfill "any request for records which (i) reasonably describes [the] records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." *Id.* § 552(a)(3)(A).

Under DOT regulations, "DOT does not assess search fees . . . when DOT fails to comply with the time limits under § 7.31 . . . ." 49 C.F.R. § 7.43(f). In general, "DOT makes an initial determination whether to release a record requested . . . within twenty Federal working days after the request is received by the appropriate FOIA Requester Service Center designated in § 7.27." *Id.* § 7.31(a)(2). DOT "may extend [the initial determination] time limit by up to ten days" or toll it for unusual circumstances[3] or "one time for the purpose of seeking additional information needed to clarify the request." *Id.* §§ 7.31(a)(2), 7.34, 7.35. DOT's regulations do not clarify how to calculate the tolling period for a requested clarification, but § 552 of the United States Code states "that the agency may . . . toll the 20-day period while it is awaiting such information." 5 U.S.C. § 552(a)(6)(A)(ii)(I). "DOT may [also] toll the initial twenty Federal working day time period as often as necessary to clarify fee issues with the requester." 49 C.F.R. § 7.35(b). "Payment of fees is . . . necessary to exhaust administrative remedies." *Kemmerly v. U.S. Dep't of Interior*, 430 F. App'x 303, 304 (5th Cir. 2011) (per curiam).

The parties disagree as to whether the FAA had to make a determination for FOIA 9149 within twenty working days of submission or twenty working days from when Rutila perfected his request by providing the clarifying information that the FAA required. *See* Doc. 113, Def.'s Br., 22–23; Doc. 121, Pl.'s Resp., 22–25; Doc. 122, Defs.' Reply, 3–5. Rutila contends that he sent his request to the proper program office so the twenty working days ran from the date of his submission until October 5, 2016. Doc. 121, Pl.'s Resp., 22–25. The FAA's failure to respond within twenty working days waived Rutila's requirement to pay fees, according to Rutila. *Id.* at 30. Defendants

---

[3] Defendants do not aver that any "unusual circumstances" permit the tolling of the twenty working days timeframe. *See* Doc. 121, Defs.' Br. Thus, the Court does not address this issue.

argue that "Rutila perfected his request on September 16, 2016, and the response period . . . expired

on October 17, 2016," twenty working days after perfection of Rutila's FOIA request. Doc. 113,

Defs.' Br., 22. Rutila then refused to pay the $2,570 estimated processing fee for his request, which

failed to exhaust his administrative remedies, according to the Government. *Id.* at 22–23. The Court

finds neither party is correct.

     Rutila's request was not perfected until September 11, 2016, when the FAA received the

time frame for the requested documents. So, the FAA requested fees within the twenty working days

period.

> A request is not considered to be a FOIA request if the record or records sought are
> insufficiently described such that DOT is unable to respond as required by FOIA.
> The twenty Federal working day limit for responding to requests . . . will not start to
> run until the request is determined by DOT to be sufficiently understood . . . .

49 C.F.R. § 7.24(d). A requestor must "[d]escribe the record or records sought to the fullest extent

possible," and "if known, indicate the date when it was made." *Id.* § 7.24(a)(5). "A request

reasonably describes records if 'the agency is able to determine precisely what records are being

requested.'" *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996).

     Rutila broadly requested "FAA Academy Quality Assurance (AMA-505b) SOPs concerning

evaluation procedures/methods/guidance/etc., including emails concerning said guidance or

modifications and interpretations to or regarding the guidance." Doc. 35-2, App., Ex. 10. Based on

this request, an agency would be unable to determine which SOPs and emails Rutila sought because

such documents could cover decades-worth of materials. The FAA rightly requested a timeframe to

limit the search to "determine precisely what records [Rutila] requested.'" *See Kowalczyk*, 73 F.3d

at 388; Doc. 35-2, App., Ex. 11. Rutila provided the timeframe for the requested documents four

days after his initial request, which perfected his initial request. Doc. 35-2, App., Ex. 12. Exactly twenty working days later on October 7, 2016, the FAA provided Rutila with the $2570.00 final fee estimate, which Rutila refused to pay. Rutila's refusal to pay continued to toll the twenty day working period and the FAA did not process his request. *See* 49 C.F.R. § 7.35(b). Therefore, Rutila has not exhausted his administrative remedies. *See Kemmerly*, 450 F. App'x at 304 (holding that plaintiff failed to exhaust administrative remedies by failing to pay the fees for the FOIA request).

The Court finds the *Yeager* case that Rutila relies on distinguishable. *See* Doc. 121, Pl.'s Resp., 26. In *Yeager*, the plaintiff submitted four FOIA requests for "four complete record systems and the technical records relating to each system." *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 317 (D.C. Cir. 1982). After working with the Drug Enforcement Administration ("DEA") to narrow the scope of his requests in the district court, the district court rejected the DEA's arguments that the FOIA requests did not "reasonably describe" the requested records. *Id.* at 318. The D.C. Court of Appeals also rejected this argument because "the DEA knew 'precisely' which of its records had been requested and the nature of the information sought from those records" after working with the plaintiff to narrow the scope of the requests in the district court. *Id.* at 326.

Here, the parties narrowed the scope of the inquiry on September 11, 2016, when the FAA received a timeframe for the requested records. Until that point, the FAA could not determine precisely what records Rutila requested because his initial request included all documents regardless of the date of creation. Rutila's response to the FAA inquiry further evinces the need for clarification because Rutila only wanted documents from "a period of 12 months beginning on September 7th, 2015." Doc. 35-2, App., Ex. 12. Accordingly, Rutila's refusal to pay failed to exhaust his

administrative remedies and the Court **GRANTS** summary judgment on FOIA 9149 in favor of
Defendants.

B.    *Whether the FAA Adequately Searched for the ADACEL Emails (FOIA 9151)*

Defendants argue that they adequately searched "all systems that are likely to turn up the
information requested." Doc. 113, Defs.' Br., 32 (citing *Ryan v. FBI*, 113 F. Supp. 3d 356, 362
(D.D.C. 2015)). Further, Rutila does not identify where or how else the FAA should have conducted
its search. *Id.* at 33 (citing *Negley v. FBI*, 589 F. App'x 726, 732 (5th Cir. 2014)).

Rutila first responds that the FAA fails to meet the technical requirement to "aver 'all files
likely to contain responsive records were searched.'" Doc. 121, Pl.'s Resp., 31–32 (quoting *Maydak
v. Dep't of Just.*, 362 F. Supp. 2d 316, 326 (D.D.C. 2005)). Second, he contends that the FAA
unreasonably and too narrowly construed the request to exclude "an unknown number of Adacel
representatives . . . on-site at the FAA Academy as contractors." *Id.* at 33. Further, he argues that
the "FAA had a duty to search for emails from Johnston—*who is Adacel*—to the personnel described
in the request" after he provided the FAA with a lead: Brent Johnston's name. *Id.* at 35–36 (citing
*Montgomery v. IRS*, 2020 WL 1451597, at \*5 (D.D.C. Mar. 25, 2020)). Third, Rutila does not aver
that other records exist, but he "attack[s] the FAA's search methodology." *Id.* at 37. Fourth, Rutila
argues that his request for records "seeks emails from Adacel 'sent to or received by **personnel at the
FAA Academy** whom are responsible for overseeing Adacel equipment,'" not just emails within the
FAA Academy. *Id.* at 38.

The Court will address each of Rutila's arguments in turn. First, Rutila misconstrues the law.
FOIA does not straight jacket an agency by requiring verbatim language, but imposes a duty to
"perform[] a search reasonably calculated to yield responsive documents." *Batton v. Evers*, 598 F.3d

- 13 -

169, 176 (5th Cir. 2010). The agency may demonstrate satisfaction of this duty through "affidavits that provide a detailed description of its search methods." *Negley*, 589 F. App'x at 729 (citing *Batton*, 598 F.3d at 176). To evidence this, agencies routinely "aver 'all files likely to contain responsive records were searched'" but—like Rutila's cited cases demonstrate—that alone does not satisfy the adequate search requirement. *See Maydak*, 362 F. Supp. 2d at 326 (finding the search inadequate when "no one aver[red], and the record d[id] not otherwise permit the inference that all files likely to contain responsive records were searched"); *Montgomery*, 2020 WL 1451597, at *5 (finding a search inadequate when "the agency[] fail[ed] to invoke the 'magic words,' [and] Plaintiffs . . . provided 'countervailing evidence' as to the inadequacy of the search"); *Bonaparte v. U.S. Dep't of Just.*, 531 F. Supp. 2d 118, 122 (D.D.C. 2008) (finding a search inadequate when the affidavit "d[id] not describe the filing systems searched, the search methods employed and the search terms utilized, nor has [affiant] averred that all files likely to contain responsive records were searched"); *Jefferson v. Bureau of Prisons*, 2006 WL 3208666, at *6 (D.D.C. Nov. 7, 2006) (finding a search inadequate when the FBI failed to search the relevant computer drives and did not "aver that the agency searched all files likely to contain records responsive to Plaintiff's request"); *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 230 (D.D.C. 2013) (finding a search inadequate because agency did not "at a minimum, . . . aver that it ha[d] searched all files likely to contain relevant documents"); *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 307 (D. Conn. 2008) (finding a search inadequate because agency's averment that it reasonably searched for responsive records was conclusory). Ultimately what matters is whether the agency adequately searched for the records.

Second, the FAA searched broadly for the records and followed up on Rutila's request to search for emails from Brent Johnston. The Academy FOIA coordinator had all managers within the Academy's Air Traffic Division ("AMA-500") search for the email records requested in FOIA 9151 because "AMA-500 provides technical training in the Air Traffic Control Specialist occupation, including the training performed on Adacel simulators" but these searches produced no responsive records. Doc. 114-1, Goodman Decl., 27–28. However, the AMA-500 managers informed the Academy FOIA coordinator that even though their office uses the Adacel simulators, the ATO owns the contract with Adacel and the Technical Services Division ("AMA-900") oversees the equipment, so these divisions might have responsive records. *Id.* at 28. The employees of AMA-900 searched for any responsive records but did not locate any. *Id.* at 29. The AMA searches, together, resulted in the Academy's records denial letter. *Id.* In the ATO division, the program manager for the Safety and Technical Training's Tower Simulation System ("TSS") Program Office conducted an email search and produced the two helpdesk tickets that were produced with the ATO letter. *Id.* at 30.

After Rutila appealed and provided the name "Brent Johnston," both divisions conducted another search. AMA-900 located two emails *Id.* at 31–32. The ATO contacted Brent Johnston—a contractor with the Adacel contract—and he searched his FAA and contractor email accounts, uncovering one previously unlocated email. *Id.* at 33. The TSS program manager also researched his email and found one email and a two-page Issue Ticket. *Id.* at 34. These records were all provided to Rutila after his appeal. *Id.* at 35.

Third, the Court finds no issue with the FAA's search methodology. The FAA attested that

> "[n]o other organization within the FAA would be likely to maintain the records Mr. Rutila requested because these are the only organizations that use the Adacel simulator equipment (the Academy) and manage the Adacel contract (Air Traffic Organization). Therefore, there would be no reason for any other organization's employees to interact with Adacel."

Doc. 114-1, Goodman Decl., 27. The FAA requested any records from all the agencies that might prove responsive to Rutila's request. Thus, the search "was reasonably calculated to discover the requested documents." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950–51 (D.C. Cir. 1986); *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1357 (D.C. Cir. 1983)).

Fourth, Rutila specifically requested only emails "sent to or received by personnel at the FAA Academy," so the FAA reasonably calibrated its search to cover personnel at the Academy. The FAA assigned the request to the only users of the Adacel simulator equipment, the Academy and ATO. Doc. 114-1, Goodman Decl., 27. The Academy searches of AMA-500 managers' and AMA-900 employees' emails returned no responsive records. *Id.* at 27–29. Even though Rutila only requested emails "sent to or received by personnel at the FAA Academy," the FAA also inquired with the ATO because the ATO managed the Adacel contract for the simulators. *Id.* at 29–30. The FAA had the program manager for the Adacel contract search all emails that produced the two unredacted tickets provided to Rutila. *Id.* at 30. Directing the AMA-500 managers, AMA-900 employees, and the Adacel program manager to search their emails was "reasonably calculated to yield responsive documents." *See Batton*, 598 F.3d at 176. Thus, the Court **GRANTS** Defendants' motion for FOIA 9051.

C.    *Whether Rutila Properly Requested Bostic's Records (FOIA 862)*

Defendants argue that the first three requests of FOIA 862 are overbroad because they request "all" records of a certain type. Doc. 113, Defs.' Br., 25–26. Defendants argue the last two requests of FOIA 862 would require them to create records. *Id.* at 26–28. Below, the Court addresses the arguments for the first three requests within FOIA 862 and then the arguments regarding the last two requests of FOIA 862.

1.    Whether Requests 1–3 of FOIA 862 Were Improper

Rutila requested "[a]ll BMC Remedy Records for Madeline Bostic[,]" "[a]ll VMAT requests submitted for Madeline Bostic, and "[a]ll emails . . . regarding Madeline Bostic . . . from 2011 to the present." App., Ex. 12, *Rutila v. United States Dep't of Transp.*, No. 3:16-CV-3433-BK (N.D. Tex. Sept. 25, 2017), Doc. 24-2. Defendants argue that requests, like Rutila's, seeking "all" documents, "without confining search parameters, are not considered to be proper if they do not specify a time period, or . . . subject matter." Doc. 113, Defs.' Br., 25. Such requests are considered "overbroad," according to Defendants. *Id.* Further, the FAA retired the VMAT system "before Bostic joined the FAA," so no records could exist for this request. *Id.* at 25–26.

Rutila responds that his requests reasonably described the records requested and the FAA closed his requests to foreclose judicial review. Doc. 121, Pl.'s Resp., 45, 49. Rutila also makes several specific arguments. He first argues that the identification of the BMC Remedy system in his request reasonably describes the location of the records. *Id.* at 46. Second, Rutila contends that the FAA's "arbitrary" application of a January 1, 2016, to February 17, 2017, timeframe to the BMC Remedy searches demonstrates the inadequacy of the search. *Id.* at 47–48. Further, the FAA's searches uncovered records created before January 1, 2016, which creates "a dispute of material fact rendering

- 17 -

summary judgment inappropriate." Doc. 121, Pl.'s Resp., 50. Third, Rutila avers that his VMAT request did not limit the search to the retired VMAT system but covered successor systems because FAA employees colloquially referred to the successor systems as the "VMAT system." *Id.* at 49. Finally, Rutila argues that the email request sufficiently describes the centralized inbox and the subject matter as "those regarding Madeline Bostic." *Id.* at 51–52.

First, the BMC Remedy request is too broad. BMC Remedy "is one of the FAA's current information technology service management tools which provides a ticketing system to track information technology helpdesk assignments." Doc. 114-1, App., 21. Rutila requested all records in this system "for Madeline Bostic." App., Ex. 12, *Rutila v. United States Dep't of Transp.*, No. 3:16-CV-3433-BK (N.D. Tex. Sept. 25, 2017), Doc. 24-2. This last phrase fails to describe what Rutila sought. Does he seek all BMC Remedy records submitted by Madeline Bostic, all records that mention Madeline Bostic, both, or something else? *See e.g. Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp. 2d 101, 162–63 (D.D.C. 2013), *aff'd* 969 F.3d 406 (D.C. Cir. 2020) (granting summary judgment to the CIA for a FOIA request for "all [CIA] records pertaining to the IBM supercomputer 'Watson'" because it failed to reasonably describe the records sought). The request also broadly asks for all "related" tickets. Doc. 24-2, App., Ex. 12. "[L]ife, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion." *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (quoting *Massachusetts v. Dep't of Health & Human Servs.*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989)) (dismissing a FOIA request "for 'all' records that 'relate to' each subject area" as overbroad and burdensome). This lack of specificity and overly broad request demonstrates Rutila's failure to reasonably describe the records sought.

- 18 -

Second, Rutila's arguments regarding the timeframe applied to the searches for the records go to the adequacy of the search[4] and not the propriety of his request. The Court need not address this argument about the adequacy of any search by the FAA or whether the FAA uncovered records created before January 1, 2016, regarding Madeline Bostic because the Court finds Rutila's request for the BMC Remedy records was too broad and therefore an invalid request. *See Freedom Watch, Inc.*, 925 F. Supp. 2d at 61 (citing 5 U.S.C. § 552(a)(3)(A)).

Third, the VMAT request did not reasonably describe what documents Rutila sought. The FAA retired the VMAT system in 2014—two years before Madeline Bostic joined the FAA—but the colloquial term "VMAT Request" persisted when referring to helpdesk requests on the successor systems. Doc. 114-1, Goodman Decl., 25 n.2. However, within the FAA, "there are multiple help desks . . . to which employees may have referred to as the VMAT system." *Id.* Rutila did not pinpoint which system or systems he wanted the FAA to search. Further, Rutila—similarly to the first request—sought "[a]ll VMAT requests submitted *for Madeline Bostic*." What he means by this is inherently unclear. Additionally, Rutila sought all "related information" for these VMAT requests "and all documents 'relate' to all others in some remote fashion." *Freedom Watch*, 925 F. Supp. 2d at 61 (quoting *Massachusetts*, 727 F. Supp. at 36 n.2). Thus, the VMAT request did not reasonably describe the records sought to "enable[] a professional employee of the agency who was familiar with

---

[4] The individual conducting the search performed three separate searches of the system: "1) using 'Madeline' to search only the first name field; 2) using 'Bostic' to search only the last name field; and 3) using the combination of 'Madeline' in the first name field and 'Bostic' in the last name field." Doc. 114-1, Goodman Decl., 23. These searches failed to return any helpdesk tickets in the BMC Remedy system from January 1, 2016, to February 17, 2017—Bostic's start date with the agency to the administrative closure of the request. *Id.* at 23–24.

the subject area of the request to locate the record with a reasonable amount of effort." *See Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990).

Thus, the Court finds all three of these requests improper.

2.    Whether Requests 4–5 of FOIA 862 Were Improper FOIA Requests

Rutila requested copies "of the Active Directory Account profile (all tabs) for Madeline Bostic" and "the NEXTGEN Toolbox profile for Madeline Bostic." App., Ex. 12, *Rutila v. United States Dep't of Transp.*, No. 3:16-CV-3433-BK (N.D. Tex. Sept. 25, 2017), Doc. 24-2. Defendants argue that the request would require them to create records, making the request improper. Doc. 113, Defs.' Br., 26–27. Defendants further contend that Rutila "has not submitted proper request or communicated with the agency during the pendency of this lawsuit to clarify or re-frame these requests." *Id.* at 27–28.

Rutila first contends that his request is for a search, which does not require the creation of a record. Doc. 121, Pl.'s Resp., 52–53. Further, he argues that the history of FOIA demonstrates that duplication of an existing record on a new medium "does not confer 'new record' status on the media." *Id.* at 54. Rutila avers that courts examine "whether the record is readily reproducible" and then "the burden imposed on the agency" by the request. *Id.* at 54–56 (citing *Sai v. Transp. Sec. Admin.*, 466 F. Supp. 3d 35 (D.D.C. 2020)). Lastly, Rutila argues that "[t]his request does not involve the creation of a screen image; it requests the duplication of data readily available and reasonably described to the FAA." *Id.* at 56.

The Court agrees with Defendants. The Active Directory system "is the FAA's main directory service." Doc. 114-1, Goodman Decl., 18. The system "organizes and displays" user profile data manually entered by the user or collated "from various other sources (such as several system

profiles)." *Id.* The NEXTGEN Toolbox system "was used to manage mailing lists and for email password resets prior to 2014." *Id.* at 19. Neither system is configured to "allow[] data to be exported." *Id.* Thus, both systems allow a party to search for information and display the information on a screen, but "that . . . does not constitute retention of a record." *Colgan v. Dep't of Just.*, 2020 WL 2043828, at \*10 (D.D.C. Apr. 28, 2020). "A screenshot, which amounts to creating a record, would be the only way to capture this information." Doc. 114-1, Goodman Decl., 6. Because no record exists, Defendants do not have a duty to create the record and produce it. *See Brown v. Perez*, 835 F.3d 1223, 1237 (10th Cir. 2016) (finding that an agency does not have to create screenshots under FOIA).

The Court finds Rutila's reliance on *Sai* unpersuasive. In *Sai*, the plaintiff requested documents from the Transportation Security Administration ("TSA") in "Word, Excel, electronic PDF, or the like" (i.e. non-rasterized formats). 466 F. Supp. 3d at 49. However, in responding to FOIA requests, the TSA relied on a program that took "records out of their native formats and convert[ed] them into Tagged Image Format . . . files for redaction, then convert[ed] them into rasterized PDFs for release to requesters." *Id.* The court held that the TSA failed to establish a burden that modifying its FOIA process to produce the requested documents in the non-rasterized format would be unduly burdensome for the agency, and therefore denied the TSA's motion for summary judgment. *Id.* at 50–51.

Here, the parties do not disagree over the format of the records (rasterized or non-rasterized format), like in *Sai*, but whether the records requested by Rutila exist in any format as records. Thus, *Sai* is inapposite to the current case.

More applicable are several cases that found an agency is not required to create a screenshot of search results. *See Brown*, 835 F.3d at 1237; *Stevens v. Broad. Bd. of Governors*, 2021 WL 1192672, at *3 (N.D. Ill. Mar. 30, 2021) (holding a screenshot is not "a 'form' of a software program" so the agency is not required to take screenshots of the software program); *Colgan*, 2020 WL 2043828, at *10 (holding "the search screen is not retained as a record" so the agency is not required to produce screenshots of the search); *Cole v. Colpan*, 2020 WL 7042814, at *7 (D.D.C. Nov. 30, 2020) (holding an agency is not required to segregate files by creating a screenshot containing only the non-exempt computer modelling code). These cases rely on the Supreme Court's consistent refrain that "FOIA imposes no duty on the agency to create records." *Forsham v. Harris*, 445 U.S. 169, 186 (1980); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."); *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144 (1989) (defining agency records as those created or obtained by the agency). Taking a screenshot of these programs like Rutila requests would require the agency to create a record not already in existence. Accordingly, the Court finds Rutila's Active Directory Account and NEXTGEN requests would require the agency to create records, which is an improper request.

Having found all the requested records for FOIA 862 improper, the Court **GRANTS** summary judgment on FOIA 862 in favor of Defendants.

D.    *Whether Rutila Properly Requested Mitchell's Records (FOIA 1174)*

Defendants present the same arguments for FOIA 1174 as for requests four and five of FOIA 862. Doc. 113, Defs.' Br., 26–28. Defendants argue that the request would require them to create records, making the request improper, and that Rutila "has not submitted proper requests or

- 22 -

communicated with the agency during the pendency of this lawsuit to clarify or re-frame these requests." *Id.*

Rutila incorporates his prior arguments for FOIA 862 regarding broadness and the creation of records. *See* Doc. 121, Pl.'s Resp., 56 ("Rutila has combined most of his objections as to FAA's search . . . in Request 1174 to the similar discussion . . . in Request 862."). Rutila adds that his stipulation that a screenshot "would be considered an acceptable means of fulfilling the request . . . did not close the door to other acceptable methods." *Id.* at 57.

For the same reasons as requests four and five of FOIA 862, the Court finds Defendants did not have a duty to create a record through a screenshot and produce this record to Rutila. *See Brown*, 835 F.3d at 1237. Rutila's request for "[a] copy of the directory or folder structure of . . . all of Rick Mitchell's network drives and 'My Documents' folders" would require some form of record to be created, whether a screenshot or handwritten note. FOIA does not require Defendants to create a record of any kind. *See Reporters Comm. for Freedom of the Press*, 445 U.S. at 152. Therefore, the Court **GRANTS** summary judgment on FOIA 1174 in favor of Defendants.

E.    *Whether the FAA Adequately Searched for the ATO Information (FOIA 803)*

Defendants argue that the document that Rutila requests, the Air Traffic Training Manual, does not exist. Doc. 113, Defs.' Br., 41. Unfortunately, the misunderstanding about this document stems from the "FOIA coordinator's use of that term in their email correspondence" when referring to the Air Traffic Technical Training Work Instruction, according to Defendants. *Id.* at 40–41.

Rutila contends that the question about the existence of the Air Traffic Training Manual raises an issue of material fact that precludes summary judgment. Doc. 121, Pl.'s Resp., 41. Further, the FAA's evidence in support of its motion, denies the existence of a document with that "exact

description" but not whether a "similarly-named document" exists, according to Rutila. *Id.* at 42. Rutila also contests the adequacy of the FAA's search for responsive records for "the remaining elements" of his FOIA request except the "position descriptions." *Id.* at 43.

The FAA assigned FOIA 803 to the FAA Academy because the request sought section descriptions and responsibilities of the Enroute, Radar Operations, and Tower section of the Academy. Doc. 114-1, Goodman Decl., 36. Specifically, the Quality Assurance Branch conducted the search for the relevant records because it "is responsible for all of the Academy's Air Traffic Division Quality Assurance Branch processes and procedures." *Id.* at 38. The employee that searched for the records "determined that the Academy does not possess documents that fit the exact description of what Mr. Rutila requested" but that the Air Traffic Technical Training Work Instruction "provides the type of description Mr. Rutila's request described." *Id.* at 39–40. Because the position descriptions fell within AMA-500, the FAA obtained copies of the position descriptions from the AMA-500's human resource specialist, who maintained a binder of the position descriptions. *Id.* at 40.

As for Rutila's first argument, the FAA has adequately denied the existence of the Air Traffic Training Manual. The FAA says an employee "[i]nadvertently . . . referred to the work instruction document" and "no document exists with the title of 'Air Traffic Training Manual.'" *Id.* at 37, 42. This language makes clear that the FAA does not have a document by that name. Further, Rutila's argument regarding the "exact description" misquotes and takes the quote out of context. Ms. Goodman, "Manager of the [FAA] national FOIA Program," stated that the employee conducting the search "determined that the Academy does not possess documents that fit the exact description of what Mr. Rutila requested *related to Enroute, Radar Operations, and Tower*, but instead

determined the only responsive document was the 'Air Traffic Technical Training Work Instruction.'" *Id.* at 1, 41 (emphasis added). Rutila selectively omits the emphasized portion to change the meaning of this sentence to fit his argument. This does not mean that the FAA limited its search to only documents that fit the "exact description" of what Rutila requested. To the contrary, the FAA provided Rutila the Air Traffic Technical Training Work Instruction, which does not fit the "exact description" of the Air Traffic Training Manual. This also evidences the FAA's liberal construal of Rutila's request by providing him documents that related to his request. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (finding a request for documents "pertaining to" an individual required search of documents not indexed under that individual's name). Because the Court "must decide only whether the search was adequate" and not whether "other documents may exist that were not located in the search," the Court **GRANTS** Defendants' motion for FOIA 803.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 112) for all five FOIA requests: FOIA 803, 862, 1174, 9149, and 9151.

SO ORDERED.

SIGNED: June 30, 2022.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE